**In re GAINESVILLE P–H PROPERTIES, INC.,**
**Debtor.**

**Bankruptcy No. 87–604–BKC–6P1.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

July 13, 1988.

Lionel H. Silberman, Orlando, Fla., Jeffrey W. Kelley, Atlanta, Ga., for debtor.

S.J. Zusmann, Atlanta, Ga., for East-Group.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

On March 2, 1988 and April 12, 1988, this Court held hearings on motions filed by the debtor pursuant to 11 U.S.C. § 365 to assume five non-residential land leases with EastGroup Properties, Ltd. ("EastGroup"). The lessor opposes the motions and contends that a different entity, Southern Motel Associates, Ltd. ("SMA"), is the true tenant under the leases.

Upon the evidence and argument presented, the Court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. Gainesville P–H Properties, Inc. ("GPHP") is a Florida corporation presently engaged in the business of operating eleven motels, five of which are located on the property owned by EastGroup. The sole stockholder of GPHP is Florten Corporation which is a wholly owned subsidiary of 11 Stars Realty, Inc.

2. EastGroup Properties, Ltd., is a real estate investment trust which was known as ICM Realty prior to April 1, 1983. It is the owner of the real properties on which the five motels are located.

3. Southern Motel Associates, Ltd. ("SMA") is a New Jersey limited partnership and also a debtor in this Court, having filed for relief on March 16, 1988, Case No. 87–605–BKC–6P1. The general partner of SMA is 11 Stars Realty, Inc., a Florida Corporation.

4. Gainesville Land and Holding Corporation ("GLHC") is a Florida corporation which was merged with GPHP on October 31, 1978.

5. Pan–Hans Properties, Ltd. ("PHP") is a Georgia corporation which was merged with GPHP on October 31, 1978.

6. Amir Khimani is the principal and chief executive officer of GPHP and the principal and chief executive officer of SMA.

7. On June 10, 1974, EastGroup leased to GPHP (then GLHC) the real property on which the Jacksonville Motel and Orlando Motel are located. On the same date, East-Group leased to GPHP (then PHP) the property on which the Plus Park Motel and the Bell Road Motel are situated. These leases were twice amended in 1974.

8. On September 20, 1974, EastGroup leased to GPHP (then GLHC) the property on which the Gainesville Motel is located. This lease was amended once in 1974.

9. By two leases dated April 1, 1978, SMA leased to GPHP the properties in Florida and Tennessee which it owned, and SMA sub-leased to GPHP the properties owned by EastGroup.

10. By agreement dated April 17, 1979, GPHP assigned its position as lessee under each of the five 1974 EastGroup land leases to SMA.

11. On December 17, 1979, Amir Khimani and his associates executed Agreements to acquire all of the stock interests of GPHP and all of the partnership interests of SMA.

12. On October 1, 1980, EastGroup consented to a change in the ownership of SMA. The parties executing the Consent and Agreement were EastGroup, the former partners of SMA as seller, and the buyers, Amir Khimani and associates. Under the terms of the agreement, the obligations of SMA to EastGroup under the land leases were guaranteed by Amir Khimani and his associates.

13. Each of the five 1974 land leases called for fixed rentals to be paid to East-Group on the first day of each calendar quarter as follows:

| | |
|---|---|
| Jacksonville | $ 6,375.00 |
| Orlando | 7,656.25 |
| Plus Park | 7,281.25 |
| Bell Road | 7,593.75 |
| Gainesville | 12,500.00 |

SMA was also obligated to pay percentage rentals, based upon occupancy, on the 30th day after the end of each calendar quarter for the preceding three months.

14. On April 24, 1987, GPHP filed in this case "Debtor's Motion for Extension of

Time Within Which to Assume Non-Residential Leases of Real Property" seeking a sixty-day extension of the § 365(d)(4) period for assumption or rejection of executory contracts and unexpired leases. On April 27, 1987, the Court entered an order extending the period for assumption/rejection of leases by sixty days.

15. GPHP subsequently filed motions to assume the leases with EastGroup Properties which are the subject of this hearing. No similar motion to assume or reject or to extend the time for assumption/rejection was filed in the SMA case.

16. On April 3, 1987, EastGroup received the fixed rentals due on April 1, 1987, and also received the percentage rentals due April 30, 1987.

17. By letter dated June 23, 1987, Counsel for EastGroup advised counsel for SMA that EastGroup considered the subject leases to have been rejected because:

(1) SMA had not assumed the subject leases within the sixty-day period of § 365(d)(4); and

(2) SMA had not obtained an extension of the § 365(d)(4) time period within the sixty days.

18. Shortly thereafter, EastGroup filed in the SMA case a Motion to Compel Compliance with § 365(d)(4), suggesting that SMA was the tenant under each of the five motel leases, that SMA had not timely filed any motions under § 365(d)(4), and that the leases had therefore been rejected.

19. On July 3, 1987, EastGroup refused to accept payment of the fixed rental due on July 1, 1987. By agreement of SMA and EastGroup, the rental payments were deposited into an escrow account without prejudice to either party. The percentage rentals which were due and payable to EastGroup July 30, 1987, were likewise deposited in this same account.

20. Hearings on EastGroup's motion were held September 1 and 3, 1987, and on December 28, 1987, this Court entered its Findings of Fact and Conclusions of Law in which SMA was found to be the tenant under the subject leases and that SMA's failure to timely assume the leases resulted in their termination. *See, In re Southern* *Motel Associates, Ltd.,* 81 B.R. 112 (Bkrptcy.M.D.Fla.1987).

21. On December 2, 1987, the escrow arrangement between EastGroup and the debtor concluded and EastGroup received the accumulated rents.

## ISSUES PRESENTED

EastGroup objects to the assumption of the leases and claims that SMA, not GPHP, is the proper lessee. EastGroup's argument is predicated upon this Court's findings entered December 28, 1987, in which SMA was found to be the actual tenant under the leases. The Court must first decide whether it is bound by its earlier findings.

Should the Court not feel constrained by its earlier findings and conclude that GPHP is the lessee, the remaining issue is whether GPHP may assume the leases in view of the changed franchise agreements (Travelodge substituted for Days Inn).

## CONCLUSIONS OF LAW

1. The issues in this case are identical to those presented in *In re Southern Motel Associates, Ltd.,* 81 B.R. 112 (Bkrptcy.M.D. Fla.1987), where the lessor, EastGroup Properties, Ltd., sought the entry of an order directing the debtor to comply with § 365(d)(4). The main defense to that action was the debtor's contention that GPHP, not SMA, was the actual tenant under the leases. The Court concluded otherwise and found in favor of EastGroup as evidenced by Order of December 28, 1987.

2. The evidence presented in this case is similar to that presented in the SMA case. Specifically, the evidence shows that:

(1) GPHP, as the successor by merger, was the original tenant under the five subject leases.

(2) Each of the leases was assigned by GPHP to SMA on April 17, 1979.

(3) On October 1, 1980, EastGroup (then known as ICM Realty), SMA, by its general partner 11 Stars Realty, Inc., and Amir Khimani were parties to a Consent and Agreement which recited inter alia:

(a) SMA was the tenant under the subject leases leases by virtue of the April

17, 1979 Assignment and Assumption of Leases;

(b) GPHP operated motels, including the five motels located on the property in issue here, under leases or sub-leases with SMA;

(c) The five motel properties are the only leased properties; the other six properties are owned by SMA.

■ It is clear that although GPHP was the original tenant under the subject leases, it had subsequently assigned its interests in the leases to SMA. GPHP has no interest in the leases at this time and is not entitled to assume them on behalf of SMA.

3. EastGroup has asked this Court to apply the doctrine of virtual representation as part of the doctrine of res judicata to bind the debtor to the findings entered in the SMA case. The essence of that doctrine is that a person may be bound by a judgment entered in another proceeding even though not a party to that action if one of the original parties was so closely aligned to the later litigant's interests to be his virtual representative. *See Aerojet General Corporation v. Askew*, 511 F.2d 710 (5th Cir.1975); *Cotton v. Federal Land Bank of Columbia*, 676 F.2d 1368 (11th Cir.1982). Here, EastGroup contends that Amir Khimani's position as officer and director of 11 Stars Realty, SMA and GPHP and the fact that attorney Lionel Silberman represents both debtors provides sufficient linkage between the entities to bind the debtor to the SMA findings.

The Court finds it ironic that EastGroup now makes this argument when it argued so convincingly in the SMA litigation that GPHP and SMA were separate entities. The Court will not enter an order based on this doctrine. Instead, the Court will stand on the evidence presented in this case to conclude that the debtor, not being a party to the lease, has no interest or standing to assume the land leases with EastGroup.

■ 4. In both the SMA litigation and the instant case, it has been suggested that EastGroup waived its right to treat SMA as the tenant by accepting rent from GPHP. The Court does not agree.

EastGroup clearly had a right to receive payments after the petition was filed. In-

deed, § 365(d)(3) specifically mandates that the debtor-in-possession pay all obligations "arising from and after the order for relief under any unexpired lease of non-residential real property ...." The fact that EastGroup received several payments from GPHP (the operator of the motels) does not, standing alone, change the fact that SMA was the tenant under the leases. There must be some other substantial evidence offered to justify the conclusion that there has been a substitution of parties under the leases. In this case, none was presented.

5. Having concluded that the debtor has no interest in the subject leases, the Court need not address the issue of whether the debtor is entitled to assume the land leases notwithstanding an alleged default.

The Court will enter a separate order denying debtor's motion in accordance with these findings.