**In re GAINESVILLE P–H
PROPERTIES, INC.,
Debtor.**

**In re SOUTHERN MOTEL
ASSOCIATES, LTD.,
Debtor.**

**Bankruptcy Nos. 87–604–BKC–6P7,
87–605–BKC–6P7.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Oct. 18, 1989.

See also, Bkrtcy., 81 B.R. 112, Bkrtcy., 87 B.R. 709.

Frank M. Wolff, Maitland, Fla., for debtors.

Peter N. Hill, Orlando, Fla., for trustee.

George E. Mills, Orlando, Fla., trustee.

Samuel J. Zusmann, Orlando, Fla., for Eastgroup Properties, Inc.

Richard B. Webber, Orlando, Fla., for Days Inn of America Franchising, Inc.

Kelton M. Farris, Orlando, Fla., for Al Olsham and Morris Macy as trustees.

Tompkins A. Foster, Orlando, Fla., for Metropolitan Federal Sav. & Loan and Altus Bank.

Elsie T. Apthorp, Winter Park, Fla., for Specialty Roofing and Waterproofing Company, Inc.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

These cases are before the Court upon the trustee's motion for substantive consolidation. A hearing was held on August 15, 1989, and upon the evidence presented, the Court enters the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

These cases were commenced by the filing of voluntary petitions under Chapter 11 of the Bankruptcy Code on March 16, 1987. On February 1, 1989, both cases were converted from Chapter 11 to Chapter 7. George E. Mills, Jr. was appointed trustee in both cases.

Southern Motel Associates, Ltd. ("SMA") is a limited partnership formed for the purpose of acquiring and holding fee simple title to, and leasehold interests in, various motel properties.

Gainesville P–H Properties, Inc. ("GPH") is a Florida corporation whose sole business was the operation of the motel businesses owned and leased by SMA with one exception. For a short time, GPH operated a motel in Pensacola on behalf of an unrelated entity. With that one exception, SMA was the only·entity for which GPH performed services. Ownership of the two debtor entities was common.

Both entities operated out of a central office in Orlando, Florida. Although employees at the central offices performed services for both entities, they were paid exclusively by GPH. No effort was made to allocate the overhead between the two entities.

GPH and SMA entered into written lease agreements with respect to the eleven motel properties in Florida and Tennessee, pursuant to which GPH's obligations to SMA were designed to cover SMA's monthly obligations to mortgagees and to a land lessor. In addition to its obligations under the written lease agreements, however, GPH also paid unsecured debts to SMA. Funds flowed freely between the two entities.

GPH defaulted in its obligations to SMA, at times falling three and four months in arrears, despite the fact that GPH received the cash flow from the motel properties. At no time did SMA seek to evict GPH or replace it as the operating company.

The bifurcation between ownership and operations has created confusion among creditors, with several filing claims in the wrong case.

At the hearing on August 15, 1989, the trustee reported funds on hand in the SMA case of $861,205.00 and in the GPH case of $283,917.34. The bulk of the filed claims are in the GPH case.

## CONCLUSIONS OF LAW

■ Substantive consolidation is within the power of the Bankruptcy Court by virtue of its general equitable power to issue those orders necessary to effectuate provisions of the Bankruptcy Code. *Holywell Corporation v. Bank of New York*, 59 B.R. 340, 347 (Bankr.S.D.Fla.1986). The bankruptcy court has the authority to order de facto disregard of corporate form through consolidation proceedings. *S.I. Acquisition, Inc. v. Eastway Delivery Service, Inc.*, 817 F.2d 1142, 1144 (5th Cir. 1987). The power to consolidate is one which enables a bankruptcy court to disregard separate entities in order to reach assets for satisfaction of debts of a related corporation. *James Talcott, Inc. v. Wharton*, 517 F.2d 997, 1000 (2nd Cir.1975) *cert denied*, 424 U.S. 913, 96 S.Ct. 1111, 47 L.Ed.2d 317 (1976). The exercise of that power does not require as a precondition that creditors knowingly deal with corporations as a unit. *Id.* at 1001.

■ The courts have enumerated seven factors upon which substantive consolidation may be founded, although a decision in favor of substantive consolidation need not be supported by the presence of all seven factors. *Holywell* at 347. The seven factors are:

(a) the presence or absence of consolidated financial statements;

(b) the unity of interest and ownership between various corporate entities;

(c) existence of parent and intercorporate guarantees on loans;

(d) degree of difficulty in segregating and ascertaining individual assets and liabilities;

(e) existence of transfers of assets without formal observance of corporate formalities;

(f) commingling of assets;

(g) profitability of consolidation at a single physical location.

*Id.*

Other courts have looked to three additional factors when considering consolidation: (i) the entities have common officers and directors; (ii) a subsidiary transacts business solely with its parent; (iii) both entities disregard the legal requirements of the subsidiary as a separate corporation. *Pension Benefit Guaranty Corporation v. Ouimet Corporation,* 711 F.2d 1085, 1093 (1st Cir.1983), *cert. denied,* 464 U.S. 961, 104 S.Ct. 393, 78 L.Ed.2d 337 (1983).

In *Matter of Seatrade Corp.,* 369 F.2d 845 (2nd Cir.1966), the court found that a basis for substantive consolidation was the expense and difficulty amounting to a practical impossibility of reconstructing the financial records of the debtors to determine intercorporate claims, liabilities and ownership of assets. The court further found that in that case the interrelationships of a group of companies was hopelessly obscured, and the time and expense necessary even to attempt to unscramble them was so substantial as to threaten the realization of any net assets for all the creditors. By consolidation, the court found, intercompany claims were eliminated, assets of all the debtors would be treated as against the common fund, eliminating the large number of duplicative claims filed against several debtors by creditors uncertain as to which debtor was eventually liable. *Id.*

The consolidation order entered by the bankruptcy court in *Holywell,* supra, was affirmed by the circuit court, *Miami Center Corporation v. Bank of New York,* 838 F.2d 1547 (11th Cir.1988). Among the circuit court's conclusions was the determination that hundreds of creditors, many of whom were not represented by counsel, should not be required to engage in a "shell game" in an attempt to determine which of various interrelated debtors would be able to pay them. The court found that the difficulty in tracing obligations of claims against affiliated debtors was "completely attributable to the labyrinth that [the principal] has created." *Id.* at 1552.

(reciting portions of the bankruptcy court's findings and conclusions).

In *S.I. Acquisition, Inc.,* supra, the Fifth Circuit Court of Appeals found that under Texas law, the alter ego remedy is one distinct method of piercing a corporate veil based upon equitable concerns. The remedy applies when there is such identity or unity between a corporation and an individual or another entity that all separateness between the parties has ceased and the failure to disregard the corporate form would not be unfair or unjust. The alter ego doctrine does not rest upon a particular creditor's dealings in reliance on a control entity, nor does it require a showing of fraud on a particular creditor. *Id.* at 1152. Florida law is similar. *See, e.g. Bendix Home Systems, Inc. v. Hurston Enterprises, Inc.,* 566 F.2d 1039 (5th Cir.1978).

■ Applying the law to the facts of this case as set forth above, the court finds that a sufficient number of factors exist in order for SMA and GPH to be consolidated:

(i) Ownership is common.

(ii) Both entities used the same employees and the same physical facilities. Employees were paid only by one entity, although they performed services for both.

(iii) Funds were transferred form one entity to another.

(iv) One entity paid unsecured debts of the other.

(v) Although the relationship between the two entities was set forth in written lease agreements, substantial defaults in performance of those agreements had no effect on the existing and continuing interrelationships.

(vi) Confusion exists among creditors regarding the question of which entity owns which assets.

(vii) It appears that, absent substantive consolidation, the majority of the creditors will receive only a small portion of their claims, while the equity interest holders may receive a substantial distribution.

Based on the foregoing, this Court will enter separately an order for consolidation.