EASTGROUP PROPERTIES, Al Olshan, Morris Macy, Plaintiffs–Appellants,

v.

SOUTHERN MOTEL ASSOC., LTD., George E. Mills, Jr., Trustee for Southern Motel Associates, Ltd. and Trustee for Gainesville P–H Properties, Inc., Gainesville P–H Properties, Inc., Defendants–Appellees.

No. 90–3701.

United States Court of Appeals, Eleventh Circuit.

July 11, 1991.

Samuel J. Zusmann, Jr., Maguire, Voorhis & Wells, P.A., Richard Blackstone Webber, II, Orlando, Fla., for Eastgroup Properties.

Kelton M. Farris, Orlando Fla., for Al Olshan and Morris Macy.

Robert L. Young Carlton, Fields, Ward, Emmanuel Smith & Cutler, P.A., Orlando, Fla., for plaintiffs-appellants.

Peter N. Hill Wolff, Hill & Meininger, P.A., Orlando, Fla., for George E. Mills, Jr.

Before KRAVITCH and EDMONDSON, Circuit Judges, and GODBOLD, Senior Circuit Judge.

EDMONDSON, Circuit Judge:

Appellants, Eastgroup Properties, Al Olshan, and Morris Macy, all of whom are creditors of Southern Motel Association, challenge the district court's decision to affirm the order of the bankruptcy court to consolidate substantively the bankruptcy estates of two related entities, Gainesville P–H Properties ("GPH") and Southern Motel Association ("SMA"). Appellants contend that both the bankruptcy court and the district court erred in finding (1) a sufficient factual basis for consolidation and (2) a legal basis for consolidation. Because we conclude that the bankruptcy trustee made a prima facie case for consolidation and that appellants provided no substantial evidence of their reliance on the separate credit of SMA, we affirm the order of substantive consolidation.

## I. BACKGROUND

Appellee George E. Mills is the Chapter 7 bankruptcy trustee for the bankruptcy estates of SMA and GPH. SMA is a limited partnership that was formed for the purpose of acquiring and holding fee simple title to, and leasehold interests in, motel properties. GPH is a corporation whose sole business is the operation of the motel businesses owned or leased by SMA.[1] Appellant Eastgroup Properties ("Eastgroup") leased five properties to SMA, which were subleased to GPH.[2] Appel-

---

1. For a short time, GPH operated a motel for an unrelated entity.

2. It seems that GPH's predecessor corporations may have originally leased the properties from Eastgroup and that, later, GPH assigned its interests as lessee in the leases to SMA. *See In re*

lants Olshan and Macy—apparently in the capacity of trustees—sold certain properties to SMA which were secured by an inferior purchase money mortgage note; they held mortgages on the motel properties purchased or leased by SMA and leased or subleased to GPH.[3]

SMA and GPH filed for Chapter 11 bankruptcy in 1987. In 1989, both bankruptcy cases were converted to Chapter 7 bankruptcy cases; and Mills was appointed the trustee in both cases. Mills moved to consolidate substantively the two bankruptcy cases.[4] This motion was granted after the bankruptcy court conducted a hearing; the trustee presented evidence for substantive consolidation, but none of the appellants presented independent evidence. The district court affirmed the bankruptcy court's order to consolidate substantively the two bankruptcy estates.

SMA and GPH are commonly owned. The limited partners of SMA are Kilimanjaro Holdings, Inc.; Tharani, Inc.; and Ringgold Investments, Inc.[5] GPH is wholly owned by Florten Corporation, which in turn is wholly owned by 11 Stars Realty, Inc. Kilimanjaro Holdings, Tharani, and Ringgold Investments own 11 Stars Realty. In addition to being owned by the same entities (Kilimanjaro Holdings, Tharani, and Ringgold Investments), both SMA and GPH have common officers. Georgia King, the secretary/treasurer and comptroller of GPH, was also the secretary of SMA's general partner; she served as comptroller, office manager, and secretary for both SMA and GPH.[6]

SMA and GPH had entered into written lease agreements about the management and operation of eleven motel properties, including the five properties SMA had leased from Eastgroup. GPH's lease obligations to SMA were designed to cover SMA's mortgage and lease obligations on the properties.[7] At the hearing, King testified that funds flowed between GPH and SMA and that it was likely that GPH undertook payment of some of SMA's unsecured obligations, although she could not recall any specific instance.[8] At some point—apparently near the end of the Chapter 11 cases—GPH defaulted on its contractual obligations to SMA, falling three and, in some cases, four months in arrears.

SMA and GPH operated out of a central office in Orlando, Florida. Five or six GPH employees worked in this office. While the majority of their time was spent performing services for GPH, the entity which paid their salaries, these employees also performed services for SMA. No effort was

---

*Gainesville P–H Properties, Inc.,* 87 B.R. 709, 710, 711 (Bankr.M.D.Fla.1988); *In re Southern Motel Assocs., Ltd.,* 81 B.R. 112, 113 (Bankr.M.D.Fla. 1987).

Eastgroup's claim against SMA is for prepetition rent and postpetition rent (during both the Chapter 11 and the Chapter 7 cases).

**3.** After liquidation of the properties securing the mortgage—and partial payment of SMA's obligation to them—Olshan and Macy have an unsecured claim of approximately $8,000,000 against SMA.

**4.** At the time that Mills moved for substantive consolidation, SMA had $861,205 available to satisfy claims against it and GPH had $283,917.34 available to satisfy its creditors. The majority of the claims filed in the two bankruptcy cases were filed against GPH, the operator of the motel properties. Administrative—that is, post-petition—claims filed against SMA included $800,000 in Chapter 11 claims and $600,000 in Chapter 7 claims. Chapter 11 administrative claims filed against GPH total approximately $1,000,000; no evidence was

presented on the amount of Chapter 7 administrative claims filed against GPH. The IRS and the State of Florida have priority claims of approximately $700,000 against GPH.

**5.** SMA's general partner is 11 Stars Realty, Inc. *See In re Gainesville P–H Properties, Inc.,* 87 B.R. at 710; *In re Southern Motel Assocs., Ltd.,* 81 B.R. at 113.

**6.** In addition, we note that Amir Khimani is the principal and chief executive officer of both GPH and SMA. *See In re Gainesville P–H Properties,* 87 B.R. at 710; *In re Southern Motel Assocs.,* 81 B.R. at 113.

**7.** We note that SMA's rental obligations consisted of fixed rental payments and percentage rental payments on each property (based on occupancy). *See In re Gainesville P–H Properties,* 87 B.R. at 710; *In re Southern Motel Assocs.,* 81 B.R. at 114.

**8.** King also testified that each of the entities had claims against the other.

made to account for the time these individuals performed services for SMA, and SMA never made salary or wage payments to them. In addition, no effort was made to allocate overhead between the two entities. Despite this sharing of office and personnel, King testified at the hearing that GPH and SMA each held itself out to the public and to its creditors as a separate corporation. There is evidence, however, that GPH represented—to at least one of the companies with which it did business, Specialty Roofing and Waterproofing, Inc.—that it owned the property where the creditor was to perform certain work, when, in fact, SMA owned the particular property.

## II. DISCUSSION

Appellants contend that the bankruptcy court erred in weighing the equities when it ordered substantive consolidation. They argue that its apparent rationale for consolidation—that, absent consolidation, SMA's equity holders might receive a distribution after all claims were paid, while GPH's unsecured creditors (who might receive a distribution if the estates were consolidated) would not receive anything—is disproved by the mathematics of the cases: that, regardless of consolidation, GPH's unsecured creditors will receive no distribution and SMA's equity holders will receive nothing. Appellants also argue that the bankruptcy court gave inadequate weight to the fact that consolidation would prejudice them because their unsecured claims would not be paid if the estates are consolidated. The trustee, on the other hand, contends that the bankruptcy court properly found that he had established a prima facie case for consolidation and that, because the appellants failed to present evidence that they had relied on SMA's separate credit, the bankruptcy court's order of substantive consolidation, which was affirmed by the district court, should be affirmed by this court.

9. The Second Circuit has likened the bankruptcy court's power to consolidate substantively to the ability to pierce the corporate veil of separate corporations to reach assets for the satisfaction of a related corporation's debt. *See James Talcott, Inc. v. Warton (In re Continental Vend-*

## A. The Legal Framework for Substantive Consolidation

While not specifically authorized by the bankruptcy code, bankruptcy courts have the power to order substantive consolidation by virtue of their general equitable powers. *See, e.g., Union Savings Bank v. Augie/Restivo Baking Co. (In re Augie/Restivo Baking Co.)*, 860 F.2d 515, 518 & n. 1 (2d Cir.1988); *Drabkin v. Midland–Ross Corp. (In re Auto-train Corp.)*, 810 F.2d 270, 276 (D.C.Cir.1987).[9] The purpose of substantive consolidation is "to insure the equitable treatment of all creditors." *In re Murray Indus.*, 119 B.R. 820, 830 (Bankr.M.D.Fla.1990). It involves the pooling of the assets and liabilities of two or more related entities; the liabilities of the entities involved are then satisfied from the common pool of assets created by consolidation. *See In re Augie/Restivo Baking Co.*, 860 F.2d at 518; *Holywell Corp. v. Bank of New York*, 59 B.R. 340, 347 (S.D. Fla.1986). In a Chapter 11 consolidation case, the creditors of the consolidated entities are combined for the purpose of voting on reorganization plans. *In re Augie/Restivo Baking Co.*, 860 F.2d at 518. In addition, substantive consolidation eliminates the inter-corporate liabilities of the consolidated entities. *Id; see also Holywell Corp.*, 59 B.R. at 347.

Because the entities to be consolidated are likely to have different debt-to-asset ratios, consolidation "almost invariably redistributes wealth among the creditors of the various entities." *In re Auto-train*, 810 F.2d at 276. Thus, courts have stated that substantive consolidation should be "used sparingly." *See In re Continental Vending Machine Corp.*, 517 F.2d at 1001 (quoting *Chemical Bank New York Trust Co. v. Kheel*, 369 F.2d 845, 847 (2d Cir. 1966)). There is, however, a "modern" or "liberal" trend [10] toward allowing substantive consolidation, which

*ing Machine Corp.)*, 517 F.2d 997, 1000 (2d Cir. 1975).

10. *See In re Murray Indus.*, 119 B.R. at 828; *In re Vecco Construction Indus.*, 4 B.R. 407, 409 (Bankr.E.D.Va.1980).

has its genesis in the increased judicial recognition of the widespread use of interrelated corporate structures by subsidiary corporations operating under a parent entity's corporate umbrella for tax and business purposes.

*In re Murray Indus.*, 119 B.R. at 828–29.

We have never addressed the issue of the standard which bankruptcy courts in this circuit should employ in making a determination of whether substantive consolidation is warranted. It is agreed that the basic criterion by which to evaluate a proposed substantive consolidation is whether "the economic prejudice of continued debtor separateness" outweighs "the economic prejudice of consolidation." *See In re Snider Bros., Inc.*, 18 B.R. 230, 234 (Bankr.D. Mass.1982). In other words, a court must "conduct a searching inquiry to ensure that consolidation yields benefits offsetting the harm it inflicts on objecting parties." *In re Auto-train*, 810 F.2d at 276.

The D.C. Circuit has elaborated a standard, which we adopt today, by which to determine whether to grant a motion for substantive consolidation. Under this standard, the proponent of substantive consolidation must show that (1) there is substantial identity between the entities to be consolidated; and (2) consolidation is necessary to avoid some harm or to realize some benefit. *Id; see also In re Murray Indus.*, 119 B.R. at 829; *Matter of Lewellyn*, 26 B.R. 246, 251 (Bankr.S.D.Iowa 1982); *In re Snider Bros.*, 18 B.R. at 238. When this showing is made, a presumption arises "that creditors have not relied solely on the credit of one of the entities involved." *Matter of Lewellyn*, 26 B.R. at 251–52. Once the proponent has made this prima facie case for consolidation, the burden shifts to an objecting creditor to show that (1) it has relied on the separate credit of one of the entities to be consolidated; and

(2) it will be prejudiced by substantive consolidation. *See In re Auto-train*, 810 F.2d at 276 ("a creditor may object on the grounds that it relied on the separate credit of one of the entities and that it will be prejudiced by the consolidation"); *see also Matter of Lewellyn*, 26 B.R. at 252 ("once the proponent of consolidation makes out a *prima facie* case the burden shifts to the objector to show there was sole reliance on the credit of one entity"); *In re Snider Bros.*, 18 B.R. at 238 (that objecting creditor "has looked solely to the credit of its debtor" and "is certain to suffer more than minimal harm as a result of consolidation" constitutes defense to substantive consolidation).[11] Finally, if an objecting creditor has made this showing, "the court may order consolidation only if it determines that the demonstrated benefits of consolidation 'heavily' outweigh the harm." *In re Auto-train*, 810 F.2d at 276.

In making his prima facie case for consolidation, the proponent of consolidation may want to frame his argument using the seven factors outlined in *In re Vecco Construction Industries, Inc.*[12]:

(1) The presence or absence of consolidated financial statements.

(2) The unity of interests and ownership between various corporate entities.

(3) The existence of parent and intercorporate guarantees on loans.

(4) The degree of difficulty in segregating and ascertaining individual assets and liabilities.

(5) The existence of transfers of assets without formal observance of corporate formalities.

(6) The commingling of assets and business functions.

(7) The profitability of consolidation at a single physical location.

---

11. Even if an objecting creditor establishes reliance in fact, it may be estopped from asserting this defense to consolidation where a reasonable creditor in a similar situation would not have relied on the separate credit of one of the entities to be consolidated—that is, "where such a claim would be unreasonable in light of all the facts." *See In re Snider Bros.*, 18 B.R. at 237, 235, 238 (estoppel applies where creditors "knew or should have known of the close association between affiliate and bankrupt," or where creditors "could be deemed to have dealt with the debtors with full knowledge of their 'consolidated operation'").

12. *See In re Vecco Construction Indus.*, 4 B.R. at 410.

*See In re Murray Indus.*, 119 B.R. at 830; *Holywell Corp.*, 59 B.R. at 347.[13] Additional factors that could be presented in some cases include (1) the parent owning the majority of the subsidiary's stock; (2) the entities having common officers or directors; (3) the subsidiary being grossly undercapitalized; (4) the subsidiary transacting business solely with the parent; and (5) both entities disregarding the legal requirements of the subsidiary as a separate organization. *Pension Benefit Guar. Corp. v. Ouimet Corp.*, 711 F.2d 1085, 1093 (1st Cir.1983). We stress, however, that we mention the specific factors set out in *Vecco, Ouimet,* and elsewhere only as examples of information that may be useful to courts charged with deciding whether there is a substantial identity between the entities to be consolidated and whether consolidation is necessary to avoid some harm or to realize some benefit.[14] No single factor is likely to be determinative in the court's inquiry.

B. Substantive Consolidation in This Case

◼ The bankruptcy court in this case found the existence of a number of factors, from which it concluded that substantive consolidation was warranted:

(1) Ownership is common.

(2) Both entities used the same employees and the same physical facilities. Employees were paid only by one entity, although they performed services for both.

(3) Funds were transferred from one entity to another.

(4) One entity paid unsecured debts of the other.

(5) Although the relationship between the two entities was set forth in written lease agreements, substantial defaults in performance of those agreements had no effect on the existing and continuing interrelationships.

(6) Confusion exists among creditors regarding the question of which entity owns which assets.

(7) It appears that, absent substantive consolidation, the majority of the creditors will receive only a small portion of their claims, while the equity interest holders may receive a substantial distribution.

*In re Gainesville P–H Properties, Inc.*, 106 B.R. 304, 306 (Bankr.M.D.Fla.1989). While appellants contest the significance of many of these findings with respect to substantive consolidation because of the particular facts of this case, they challenge as clearly erroneous only the last factor. They point out that, based on the total amount of administrative and priority claims filed in both cases (which, under the relevant provisions of the bankruptcy code, must be paid before unsecured creditors receive a distribution), there is no chance that the unsecured creditors will receive a distribution even if the bankruptcy estates are consolidated. But the bankruptcy court did not limit this finding to *unsecured* creditors; given the claim-to-asset ratio in the GPH case and the testimony at the hearing on the motion for consolidation,[15] it seems likely that many of GPH's creditors with administrative claims will receive only a small portion of their administrative claims. Appellants also contend that, even without consolidation, there is no chance that SMA's equity holders will receive a distribution because there is a total of approximately $12,000,000 in administrative and unsecured claims which have been filed that would have to be satisfied before

---

**13.** Other cases in which the seven-factor inquiry was used include *In re Mortgage Investment Co.*, 111 B.R. 604, 610 (Bankr.W.D.Tex.1990), and *In re Donut Queen*, 41 B.R. 706, 709 (Bankr.E.D.N.Y.1984).

**14.** We decline to say in the abstract whether any particular factor shows one element or another in the proponent's prima facie case: because of the fact-specific nature of cases on substantive consolidation, a factor may support either element of the prima facie case or both elements— depending on the facts of the particular case.

**15.** The bankruptcy trustee testified that, absent consolidation, there were no funds available in the GPH cases to pay general unsecured creditors and that it was possible that not all administrative claims in the GPH case would be paid in full. In contrast, he testified that it was possible that some of the general unsecured creditors in the SMA case could be paid.

SMA's equity holders would receive a distribution. Put differently, the $12,000,000 in claims would have to be reduced to a sum less than $861,205 before a distribution to equity holders would be possible. Still, at the hearing, the bankruptcy trustee testified that, in the SMA case, "the possibility exists that some money would be available to return to the Debtor equity holders possibly, depending upon objection to claims etcetera and whether those claims are allowed"; that is, the amount of claims in the SMA case may be decreased because of challenges to the claims. Thus, at this point, it is impossible to say that the bankruptcy court's findings were clearly erroneous.

▮ We still have to determine whether the bankruptcy court and the district court correctly ordered substantive consolidation. We have to determine whether "consolidation yields benefits offsetting the harms it inflicts on objecting parties," *In re Autotrain,* 810 F.2d at 276, using the *Autotrain* analysis.

We believe that the bankruptcy trustee, as the proponent of substantive consolidation, presented sufficient evidence on the common identity of the debtor entities and on the harm to be avoided or benefit to be realized from consolidation to establish a prima facie case for consolidation. That there is substantial identity between the entities to be consolidated is undisputed: appellants concede this point in their brief.[16] Appellants' real challenge would seem to be to the second part of the prima facie case: did the proponent of consolidation present evidence sufficient to meet his burden of proof that consolidation is necessary to avoid some harm or to realize some benefit? We believe that the answer to this question is "yes." The evidence presented in the hearing held by the bankruptcy court indicates that there are several possible harms to be avoided or benefits to be realized from consolidation relating to the treatment of GPH creditors as compared to SMA creditors. First, King testified that GPH had probably paid some of

SMA's unsecured obligations without being contractually obligated to do so, and the bankruptcy court apparently found likewise. Consolidation will help see to it that GPH's creditors are not harmed by such transactions for which GPH received no consideration. Consolidation will also lessen the harm being done to creditors, such as Specialty Roofing and Waterproofing, who did not know that the ownership and management functions involved in the operation of the various motels involved had been separated and that one entity held the fee simple title to, and leasehold interests in, these motels and another entity operated them—creditors who, in effect, relied on the combined credit of both entities in dealing with one of the entities. In addition, consolidation will benefit GPH creditors (administrative and priority creditors) because a larger portion of each of their claims will be paid than if consolidation did not occur—both because their claims would be paid from the larger pool of assets resulting from consolidation and because substantive consolidation eliminates claims that either debtor has against the other.

▮ Because the trustee, as proponent of consolidation, established a prima facie case for substantive consolidation, it was incumbent on the appellants to show that (1) they relied solely on SMA's separate credit; and (2) they will be prejudiced by substantive consolidation. While we acknowledge that they have shown that they will be prejudiced by substantive consolidation, we do not believe that appellants have established that they relied solely on SMA's separate credit in dealing with SMA. Appellants point to two pieces of evidence which, they contend, prove that they relied on the separate credit of SMA: (1) the testimony by Georgia King that both GPH and SMA held themselves out to the public and to their creditors as separate corporations and (2) the fact that Eastgroup pursued a court fight over the identity of the tenant in the lease contracts with Eastgroup and that the bankruptcy and district

---

**16.** In its arguments to the bankruptcy court in *In re Gainesville P–H Properties,* Eastgroup argued that, because GPH and SMA are so closely related, GPH should be bound by the findings entered in previous litigation between Eastgroup and SMA. *See* 87 B.R. at 712.

courts held that SMA was the tenant.[17] That GPH and SMA may have, in general, held themselves out to the public and to their creditors as separate corporations does not mean that appellants did not rely on the credit of both corporations. Nor does Eastgroup's litigation over the identity of its tenant satisfy its burden. That litigation only proves that Eastgroup's tenant was SMA; it proves nothing about whether Eastgroup relied on SMA's separate credit in deciding to deal with SMA.[18] Because appellants failed to prove that they relied on the separate credit of SMA in deciding to deal with it, they have failed to carry their burden of proof and their appeal must fail.

## III. CONCLUSION

We AFFIRM the order of the bankruptcy court granting substantive consolidation in the bankruptcy cases of GPH and SMA.

---

**17.** We note that this evidence regarding the identity of Eastgroup's tenant only applies to Eastgroup's defense that it relied on SMA's separate credit; it does not support the defense of Olshan and Macy.

**18.** To the extent that the bankruptcy opinions in these two cases, *In re Gainesville P–H Properties, Inc.*, 87 B.R. 709 (Bankr.M.D.Fla.1988), and *In re Southern Motel Assocs., Ltd.*, 81 B.R. 112 (Bankr.M.D.Fla.1987), serve to show that Eastgroup knew of some sort of relationship between GPH and SMA and that a portion of the rent it received was based on motel occupancy, this litigation may actually undercut Eastgroup's defense of sole reliance on SMA's credit. *See In re Snider Bros., Inc.*, 18 B.R. at 235, 237, 238.