**In re OWENS CORNING,
et al., Debtors.**

**Nos. 00–3837 to 00–3854 (JPF).**

United States Bankruptcy Court,
D. Delaware.

Oct. 5, 2004.

John J. Rapisardi, Weil, Gotschal & Manges LLP, New York, NY, Richard S. Cobb, Rebecca L. Butcher, Landis, Rath & Cobb LLP, Wilmington, DE, for Credit Suisse First Boston, as Agent.

## MEMORANDUM AND ORDER CONCERNING SUBSTANTIVE CONSOLIDATION

FULLAM, Senior District Judge.

Norman L. Pernick, J. Kate Stickles, Saul Ewing LLP, Wilmington, DE, Charles O. Monk, II, Henry R. Abrams, Joseph M. Fairbanks, Matthew G. Dobson, Edith K. Altice, Saul Ewing LLP, Baltimore, MD for Debtors and Debtors-in-Possession.

Elihu Inselbuch, Peter Van N. Lockwood, Caplin & Drysdale Chartered, New York, NY, Walter B. Slocombe, Nathan D. Finch, Caplin & Drysdale Chartered, Washington, DC, Marla Eskin, Campbell & Levine LLC, Wilmington, DE for the Official Committee of Asbestos Claimants.

Michael J. Crames, Jane W. Parver, Edmund M. Emrich, Kaye Scholer LLP, New York, NY, James L. Patton, Jr., Young, Conaway, Stargatt & Taylor LLP, Wilmington, DE, for James J. McMonagle, Legal Representative for Future Claimants.

J. Andrew Rahl, Jr., John B. Berringer, Anderson Kill & Olick P.C., New York, NY, Francis A. Monaco, Jr., Joseph J. Bodnar, Monzack and Monaco, P.A., Wilmington, DE for the Official Representatives of the Bondholders and Trade Creditors (f/k/a the Designated Members of the Official Committee of Unsecured Creditors of Owens Corning).

Kenneth H. Eckstein, Ellen R. Nadler, Philip S. Kaufman, Jeffrey S. Trachtman, Kramer, Levin, Naftalis & Frankel LLP, New York, NY, Martin J. Bienenstock,

The Debtors, joined by most of the creditor groups, have presented and prosecuted a motion for substantive consolidation— i.e., a request that the assets of, and claims against, the Debtors and all subsidiaries and affiliated entities be consolidated and treated as a single unit in these bankruptcy proceedings. A consortium of banks represented by Credit Suisse First Boston strenuously opposes such consolidation. A four-day evidentiary hearing on this issue was held by my predecessor, Judge Wolin, in May, 2003. I have read the transcript of the testimony, and have reviewed the voluminous documentary record compiled in the course of the hearing, and have had the benefit of post-trial briefing and argument. I am now prepared to set forth my views on the subject.

### I. Background

Owens Corning and 17 of its wholly-owned subsidiaries jointly filed petitions for chapter 11 reorganization on October 5, 2000, and their respective bankruptcy proceedings have, in effect, been procedurally consolidated and are being jointly administered. All of the chapter 11 petitioners and their affiliated entities continue to carry on business as debtors-in-possession. The principal litigants in this litigation include, in addition to the Debtors, the bank consortium represented by Credit Suisse First Boston; the Official Committee of Unsecured Creditors; a second committee or sub-committee of unsecured creditors

representing the bondholders and trade creditors; Kensington International, Springfield Associates and Angelo Gordon and Company; the Official Committee of Asbestos Claimants; the Legal Representative for Future Claimants; and various individual asbestos claimants. To achieve an acceptable plan of reorganization, it will be necessary (1) to determine the value of the Debtors; (2) to determine the correct amounts of existing creditors' claims, and a reasonable estimate of future claims; (3) and to determine the correct allocation of values to be distributed to the various creditors. The absolute priority rule governs: no junior creditor may be paid unless senior creditors are paid in full, and all creditors in the same priority class must be treated alike.

## II. Discussion

The claim of the banks represented by Credit Suisse (hereinafter "the Banks") is for the unpaid balance of a series of loans made to Owens Corning and various of its subsidiaries pursuant to a credit agreement dated as of June 26, 1997, in which the Banks committed to lending a total of more than $2 billion to Owens Corning and five of its subsidiaries. Forty-three Banks made commitments in varying amounts ranging from $10 million to $100 million, and made those amounts available for revolving loans, competitive advance loans, swing line loans and letter of credit commitments which could be drawn upon from time to time by the borrowers.

The parent company, Owens Corning of Delaware (OCD), guaranteed the repayment of all loans made pursuant to the credit agreement, whether to itself or any subsidiary; and each major subsidiary (those with assets having a book value of $30 million or more) also guaranteed the repayment of all loans made pursuant to the credit agreement. It is this feature of cross-guarantees which the Banks rely

upon as establishing that their claim, which, when the petition was filed, amounted to approximately $1.6 billion, is superior to the claims of all other creditors because it constitutes a direct claim against the parent company and each of the subsidiary guarantors, whereas the other creditors have direct claims against the parent company but only indirect claims against the subsidiaries, based upon the parent company's ownership of 100% of their stock. The Banks argue that, because of these differences, the Banks would be treated unfairly if substantive consolidation were to occur.

The question of when substantive consolidation is permissible has been the subject of much litigation, as well as learned discussion. At the hearing before Judge Wolin, all parties seemed to agree that the proper standard is that adopted by the D.C. Circuit in *Drabkin v. Midland–Ross Corp. (In re Auto–Train Corp., Inc.)*, 810 F.2d 270 (D.C.Cir.1987), and by the Eleventh Circuit in *Eastgroup Properties v. Southern Motel Assoc., Ltd.*, 935 F.2d 245 (11th Cir.1991). More recently, the Third Circuit Court of Appeals has addressed the question, in *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72 (3rd Cir.2003), *cert denied*, —— U.S. ——, 124 S.Ct. 1714, 158 L.Ed.2d 400 (2004).

Although the actual question presented in the *Nesbit* case was whether two separate corporations should be regarded as a single employer for purposes of determining the applicability of Title VII, the Third Circuit expressly adopted, as part of the test for that determination, the "factors Courts use in deciding whether substantively to consolidate two or more entities in the bankruptcy context." The Court added:

"While these factors vary from circuit to circuit, the test at base seeks to determine whether two or more entities' af-

fairs are so interconnected that they collectively cause the alleged discriminatory employment practice. More colloquially, the question is whether the 'eggs'—consisting of the ostensibly separate companies—are so scrambled that we decline to unscramble them. We note, however, that substantive consolidation is an equitable remedy and is difficult to achieve."

As noted by the *Nesbit* Court, the Second Circuit Court of Appeals, in *In re Augie/Restivo Baking Co.,* 860 F.2d 515 (2d Cir.1988), has summarized the requirements set forth in the reported decisions as establishing two fundamental principles: (1) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit, and (2) whether the affairs of the two companies are so entangled that consolidation will be beneficial. The Ninth Circuit has also adopted this formulation. *See In re Bonham,* 229 F.3d 750, 766 (9th Cir.2000).

■ The D.C. Circuit in the *Auto–Train* case, and the Eleventh Circuit in *Eastgroup Properties,* have taken the position that if the proponents of consolidation establish (1) that there is substantial identity between the entities to be consolidated, and (2) that consolidation is necessary to avoid some harm or to realize some benefits, a *prima facie* case for consolidation has been established, and the burden would then shift to the objecting creditor, to show (1) that it relied on the separate credit of one of the entities to be consolidated, and (2) that it will be prejudiced by substantive consolidation.

■ I have no difficulty in concluding that there is indeed substantial identity between the parent debtor OCD and its wholly-owned subsidiaries. All of the subsidiaries were controlled by a single committee, from central headquarters, without regard to the subsidiary structure. Control was exercised on a product-line basis. For example, the president of the insulating systems business managed all aspects of the production, marketing, and distribution of insulation products, regardless of whether those products were manufactured in a factory owned by OCD or by a foreign subsidiary. The officers and directors of the subsidiaries did not establish business plans or budgets, and did not appoint senior management except at the direction of the central committee (the "Natural Leadership Team"). Subsidiaries were established for the convenience of the parent company, primarily for tax reasons. All of the subsidiaries were dependent upon the parent company for funding and capital. The financial management of the entire enterprise was conducted in an integrated manner. No subsidiary exercised control over its own finances.

It is also clear that substantive consolidation would greatly simplify and expedite the successful completion of this entire bankruptcy proceeding. More importantly, it would be exceedingly difficult to untangle the financial affairs of the various entities. While it is true that, as stressed by the Banks, the Debtors have apparently expended large sums of money having accounting experts attempt to sort out, and balance, the financial affairs of each entity, there are still many reasons for challenging the accuracy of the results achieved. For example, transfers of cash between subsidiaries and parent did not include any payment of interest; and calculations of royalties are subject to question.

I conclude, therefore, that the proponents of substantive consolidation have established a *prima facie* case. The next question is whether the Banks have proved that they relied upon the separate credit of the subsidiaries.

■ There can be no doubt that the Banks relied upon the overall credit of the entire Owens Corning enterprise. Each Bank's commitment was to the entire enterprise. The decision as to whether funds would be borrowed by the parent company, or by one or more of the subsidiaries, was made by the borrowers, not by the lenders. All of Owens Corning's financial reporting was done on a consolidated basis, and only that consolidated information was provided to the Banks.

It is also important to note that, in seeking and obtaining guarantees from the "substantial" subsidiaries, the Banks knew only that each guarantor had assets with a book value of $30 million or more; the Banks had no information about the debts of such subsidiaries.

In short, there is simply no basis for a finding that, in extending credit, the Banks relied upon the separate credit of any of the subsidiary guarantors. This is not to say that the guarantees were not important to the Banks. The guarantees greatly simplified the administration of the Credit Agreement, and protected the Banks from having their claim subordinated to subsequent indebtedness of the subsidiary guarantors.

But the very existence of these cross-guarantees is a further reason for approving substantive consolidation. Any guarantor held liable on its guarantee would have a right of indemnification against whichever entity or entities borrowed the money. It would be extremely difficult to sort out the inter-subsidiary claims.

Moreover, the Banks' claims against the subsidiary guarantors are not clear-cut: each subsidiary guarantee is enforceable only to the extent that enforcement would not give rise to a claim that a voidable transfer was being carried out.

For these reasons, I believe it is unrealistic to suppose that the Banks would have an easier time collecting their claims if consolidation were denied.

It should be noted that, in October 2002, the Debtors and various creditor groups instituted an adversary proceeding against the Banks seeking to invalidate the subsidiary guarantees as constituting fraudulent conveyances. That action has been stayed pending resolution of the substantive consolidation issue. Apparently, it was felt that there would be no need to resolve the fraudulent conveyance action unless substantive consolidation were denied. Whether that assessment is correct need not be addressed at this time.

## III. Conclusions

I have concluded that substantive consolidation should be permitted, not only because of its obvious advantages—indeed, because it is a virtual necessity—but also because I see no reason why the Banks' claim cannot be appropriately dealt with in a consolidated plan of reorganization. The real issue is whether the Banks are entitled to participate, *pari passu*, with other unsecured creditors, or whether the Banks' claim is entitled to priority, in whole or in part, over the claims of other unsecured creditors. On the basis of the present record, I am not convinced that this is necessarily an all or nothing issue. That is, in the course of the plan-approval proceedings, the parties may come to a realization that the existence of the subsidiary guarantees does not warrant treating the Banks as if their claim was secured, and thus superior to the claims of all other unsecured creditors; but that the existence of the subsidiary guarantees might warrant treating the Banks' claim as if it were partially secured. Whether such a resolution would be fair and equitable to all cannot now be determined.

It does seem to me rather obvious that the interests of *all* parties would best be served by the prompt achievement of a reasonably acceptable plan of reorganization; that litigating every conceivable issue to finality would be unduly expensive; and that the parties would be well-advised to settle their differences.