In re MMH AUTOMOTIVE
GROUP, LLC, Debtor.

No. 05–40913–BKC–LMI.

United States Bankruptcy Court,
S.D. Florida,
Miami–Dade Division.

Dec. 5, 2008.

Kenneth M. Stein, Esq., Coral Springs, FL, for Debtor.

Gregory M. Garno, Esq., Miami, FL, for Petitioning Creditor.

Gary M. Freedman, Esq., Joel L. Tabas, Esq., Robert B. Miller. Miami, FL, for Trustee.

## ORDER SUBORDINATING MARK M. HESSEIN'S CLAIMS TO ALL TIMELY–FILED CLAIMS OF THE CONSOLIDATED ESTATE

LAUREL M. ISICOFF, Bankruptcy Judge.

This matter came before me on October 23, 2008, on the Trustee's Motion for Order (I) Deeming Mark M. Hessein's Claims as Untimely Filed; and (II) Subordinating Mark M. Hessein's Claim to all Timely–Filed Claims of the Consolidated Estate Pursuant to 11 U.S.C. § 726(a)(3) [DE # 457] (the "Subordination Motion"). For the reasons set forth below, I find that the untimely filed claim of Mark M. Hessein is appropriately subordinated to all timely filed claims of this consolidated bankruptcy estate.

### BACKGROUND FACTS

Hassan Hessein ("Harry") owned an automobile dealership, Mazda of Kendall, through a corporation, MMH Automotive Group, LLC. ("MMH"). Mark M. Hessein ("Hessein") is Harry's brother. Some time in April 2005, MMH transferred the automobile dealership to a company called Global Automotive, Inc. ("Global") and transferred the real property on which the automobile dealership was operated (the "Real Property") to a company called G.A.G. Realty, Inc. ("GAG"). Both transfers were allegedly for little or no consideration. Both GAG and Global were owned and controlled by a man named Ralph Sam ("Sam").[1]

On September 26, 2005, MMH filed a voluntary chapter 7 bankruptcy case. On September 27, 2005, Joel Tabas ("Trustee") was appointed chapter 7 Trustee for MMH. On December 29, 2005, the Trustee filed an action against Global (the "Avoidance Adversary") seeking recovery of the automobile dealership assets,[2] which complaint was amended on February 2, 2006, adding GAG as a party and adding a count seeking recovery of the Real Property. The basis for the relief sought by the Trustee was that the transfers of the dealership and the Real Property were fraudulent transfers recoverable pursuant to 11 U.S.C. §§ 548 and 550. The parties ultimately settled the Avoidance Adversary and, pursuant to the settlement, GAG transferred the Real Property to the Trustee by quitclaim deed. The Trustee sold the Real Property at auction for $6.85 million on March 12, 2007. The Trustee apparently abandoned his pursuit of the dealership assets.

The claims bar date for the MMH bankruptcy case was January 31, 2006 (the

---

1. Hessein and Harry had had a relationship with Sam prior to the transfer of the dealership and the Real Property. Hessein and Sam maintained a relationship after the transfer, and after the bankruptcy.

2. Adv. Proc. No. 05–06196–BKC–LMI.

"MMH Claims Bar Date"). Hessein filed a general unsecured claim in the MMH case in the amount of $984,994.20 (the "Hessein Claim") on March 16, 2007, four days after the auction of the Real Property and almost 14 months after the MMH Claims Bar Date.

The Trustee filed an objection to the Hessein Claim on May 2, 2007 [DE # 249] stating that the Hessein Claim, if otherwise allowable, should be treated as equity, not an unsecured claim. The Trustee argued alternatively that the Hessein Claim should be equitably subordinated due to his inequitable conduct relating to his alleged participation in the transfer of the Real Property and dealership assets to Global and GAG; that the Hessein Claim should be reduced by avoidable transfers Hessein had received; and finally that, in the absence of supporting documentation, the Trustee could not assess the validity of the Hessein Claim.

The Hessein Claim was undisputedly untimely filed; indeed, Hessein conceded as much in his Response to Trustee's Objection to Claim [DE # 255]. However, although there was a preliminary hearing on the claim objection, there was no final adjudication. In the meantime, the Trustee sought authority to pay all allowed unsecured claims in full, which authority was granted. After paying all MMH claims in full, other than the Hessein Claim, the Trustee reported there was approximately $1,000,000 left as a balance to pay administrative claims, any disputed claims (of which there was only one remaining—the Hessein Claim), and for possible distribution to equity.[3]

After the transfer of the Real Property, involuntary petitions for chapter 7 bank-

ruptcy were filed against GAG and Global.[4] No answer was filed in either case; orders for relief were entered in each bankruptcy case and the same chapter 7 trustee was appointed in each case. It was soon discovered that, in addition to a secured lender, and unpaid legal fees, Global had left many car owners in the lurch by taking cars through trade-in, promising to payoff the debt on the cars traded-in, and then not doing so. Of course, had Global and GAG stayed in business, which was not possible after the Real Property was transferred, perhaps these car owners would not have had the two car payment problem resulting from the failure of Global to pay for the traded-in cars.

Ultimately RegionsBank, a creditor of GAG and Global, and the Trustee, with the consent of the Chapter 7 Trustee for GAG and Global, filed a motion to substantively consolidate the bankruptcy cases of MMH, Global, and GAG. RegionsBank argued that it would be inequitable for the principal or principals of MMH, the architects of the fraudulent transfers to GAG and Global, to receive a distribution on account of their equity interests to the detriment of the creditors of GAG and Global, which entities, according to the Trustee, have combined unsecured claims totaling approximately $1.72 million.

Hessein filed an objection to the proposed consolidation, arguing that he would be prejudiced because the impact of substantive consolidation would change his late-filed claim from one that, if allowed, would receive a distribution, to a claim that would not receive a distribution, even if allowed. Hessein otherwise acknowledged that he had no objection to sub-

---

3. The Trustee has subsequently reported the amount remaining is closer to $1.8 million.

4. The cases were actually filed three months apart.

stantive consolidation and, indeed, that substantive consolidation might be appropriate.[5]

I held that an evidentiary hearing on substantive consolidation was not needed, since, as I noted in my ruling, both objecting creditors did not have any objection to the appropriateness of the substantive consolidation itself. Accordingly, I granted the motion for substantive consolidation.[6] I never ruled on the issue of the impact of substantive consolidation on priority of claims when I granted the motion for substantive consolidation since the movants advised me at the hearing on substantive consolidation that they were not seeking an adjudication regarding the relative priorities of claims at that juncture. The parties agreed that I could defer ruling on the priorities issue to a later date. That later date occurred when the Trustee filed the Subordination Motion.

Hessein filed a response to the Subordination Motion and requested an evidentiary hearing, however I determined that there was no issue raised by the Subordination Motion that required an evidentiary hearing. Hessein had previously conceded his claim was late-filed, and Hessein had previously agreed that substantive consolidation was appropriate, subject to protecting the priority of his late-filed claim. I invited the parties to brief the issue of whether substantive consolidation could or should appropriately adversely impact the priority of the Hessein Claim vis-á-vis unsecured creditors of Global and GAG, now creditors of the MMH estate. Hessein filed his memorandum of law in response to the Subordination Motion [DE

# 474] and the Trustee filed a reply [DE # 476].

## SUBSTANTIVE CONSOLIDATION AND ITS IMPACT ON CLAIMS

■ The Eleventh Circuit has held that substantive consolidation is appropriate under certain circumstances when equity so dictates:

[T]he basic criterion by which to evaluate a proposed substantive consolidation is whether "the economic prejudice of continued debtor separateness" outweighs "the economic prejudice of consolidation." In other words, a court must "conduct a searching inquiry to ensure that consolidation yields benefits offsetting the harm it inflicts on objecting parties."

*Eastgroup Properties v. Southern Motel Assoc., Ltd.*, 935 F.2d 245, 249 (11th Cir. 1991) (internal citations omitted). The court then outlined the methodology for this analysis. I followed the methodology of *Eastgroup Properties* when I granted the motion for substantive consolidation.

■ Substantive consolidation necessarily dictates the restructuring of debt, and the reallocation of resources. As the court noted in *Eastgroup Properties*, "[b]ecause the entities to be consolidated are likely to have different debt-to-asset ratios, consolidation 'almost invariably redistributes wealth among the creditors of the various entities.'" *Id.* at 248 (quoting *Drabkin v. Midland–Ross Corp. (In re Auto–Train Corp.)*, 810 F.2d 270, 276 (D.C.Cir.1987)).

■ Perhaps with a touch of irony, Hessein argues that equity dictates that his

---

**5.** A potential administrative claimant also filed an objection, which objection I overruled when I granted the motion for substantive consolidation.

**6.** See transcript of my ruling at DE # 357.

late-filed claim—which Hessein has all but conceded he waited to file because there were no assets worth filing for before the Real Property was sold [7]—should be paid ahead of the Global and GAG creditors. The Trustee argues it would be inequitable to allow someone who is, in the Trustee's view, an architect of the fraud that resulted in the transfer of MMH assets to Global and GAG, which in turn caused there to be creditors of the Global and GAG estates, to be preferred over innocent third-party creditors.

While I have never adjudicated the nature and extent of Hessein's relationship with MMH, I do note that (a) Hessein represented himself to Mazda as the managing member of MMH; (b) Hessein had business cards identifying himself as the chief operating officer of MMH [DE # 358, p. 20–21]; [8] and (c) Hessein conceded he did help his brother run the business.[9] Hessein also witnessed some of the documents transferring the MMH assets to Global and GAG. Thus, Hessein cannot claim that he is innocent of the transactions leading to the transfer of the Real Property and dealership assets to GAG and Global. As I noted before, but for the transfer from MMH to GAG and Global, the creditors of GAG and Global would not exist. Moreover, absent the resolution of the GAG Adversary Proceeding resulting in the transfer of the Real Property back to MMH, regardless of whether either GAG or Global ultimately ended up in bankruptcy, the Real Property and associated dealer assets would have been available to the creditors of GAG and Global and the proverbial shoe would have been on the other foot.

This situation is not dissimilar to that which occurred in *Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293 (1941). In *Sampsell*, the Supreme Court held that a creditor of a corporation could not complain when a bankruptcy trustee referee marshalled corporate assets for the benefit of the creditors of the bankrupt principal of the corporation. Noting that the corporation's creditor "had at least some knowledge as to the fraudulent character of [the corporation]," the Supreme Court held the "less than innocent creditor could not assert a claim to the corporate assets prior to making those assets available to creditors of the shareholder" but rather was "entitled only to *pari passu* participation with [the shareholder's] individual creditors." *Id.* at 220, 61 S.Ct. 904. In the instant case, had Hessein filed his claim

---

7. Hessein claimed he waited to file the proof of claim until after certain criminal matters in which he was involved were resolved. However, it appears more than a happy coincidence that Hessein filed his claim four days after the auction of the Real Property. It is more likely that Hessein waited to see whether it was worth filing a proof of claim. This interpretation is not only more consistent with the timing but also consistent with Hessein's reason for waiting to file what I ultimately ruled was an untimely objection to another proof of claim-that is, Hessein hadn't realized the sale of the Real Property might generate "a surplus for late-filed creditors." [DE # 292 ¶ 4(g)].

8. Although Hessein claimed the cards were a mistake by the printer, he did not testify that he never used them.

9. Although Hessein's testimony was elicited in connection with a different issue, the testimony was before me, it was transcribed and the transcript is part of the court docket. I may take judicial notice of matters within my own court docket. Fed.R.Evid. 201. *See also U.S. v. Rey,* 811 F.2d 1453, fn. 5 (11th Cir.1987).

timely, and were that claim ultimately allowed in whole or in part,[10] at best, Hessein would be entitled to share pro rata with the other unsecured creditors. However, substantive consolidation should not provide Hessein with a higher status than that set forth by the Bankruptcy Code; his status as holder of a late-filed claim puts him in the same position after substantive consolidation as it was prior to substantive consolidation—lower in priority of distribution on account of the late-filed claim.

Moreover, if I had considered the impact of the substantive consolidation of the MMH, GAG and Global estates on the Hessein Claim at the time I ruled on the motion for substantive consolidation, I would have nonetheless granted the motion when applying the criteria set forth in *Eastgroup Properties*. The methodology set forth by the Eleventh Circuit requires that "(1) there is a substantial identity between the entities to be consolidated; and (2) consolidation is necessary to avoid some harm or to realize some benefit." *Eastgroup Properties*, 935 F.2d at 249. As I previously noted, no one disputed that substantive consolidation was appropriate and so this element was satisfied. Once the proponent has met this burden "the burden shifts to an objecting creditor to show that (1) it has relied on the separate credit of one of the entities to be consolidated; and (2) it will be prejudiced by substantive consolidation." *Id.* First, Hessein clearly relied on MMH as an entity separate from GAG and Global to the extent he did, in fact, make the loan or loans identified in the Hessein Claim since MMH had ceased to do business once the assets were transferred to GAG and Glob-

al. Second, Hessein has demonstrated that he would be prejudiced by substantive consolidation because, in the absence of substantive consolidation, Hessein could have the possibility of a distribution, but by virtue of the substantive consolidation Hessein has no chance of receiving a distribution.

Thus, the Eleventh Circuit directs that I "may order consolidation only if [I determine] that the demonstrated benefits of consolidation 'heavily' outweigh the harm." *Id.* Based on the record in this case, had I not already ordered substantive consolidation I would have made such a determination and ordered substantive consolidation now. If Hessein's Claim is paid prior to, or *pari passu*, with the claims of the GAG and Global unsecured Creditors, their distribution will be materially diluted. Hessein, who deliberately participated in conveyance of the only assets that could have satisfied MMH's alleged debt to him, cannot now seek to benefit from a windfall at the expense of creditors who suffered losses on account of the initial transfer from MMH to Global and GAG.

The Subordination Motion is granted.

---

10.  As noted above, the Trustee has filed an objection to the allowance of the Hessein Claim, which objection I will not need to resolve since, after distribution to the balance of unsecured creditors, there will be no funds available to pay any subordinate claims.