In re Ida V. REIDER and James M. Reider, Debtors.

Ida V. REIDER, Plaintiff–Appellant,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant–Appellee.

No. 93–8128.

United States Court of Appeals, Eleventh Circuit.

Sept. 13, 1994.

Thomas Paty Stamps, Office of Thomas Paty Stamps, Heidi Hughes, Atlanta, GA, for appellant.

Thomas E. Prior, Prior & Buser, Atlanta, GA, O. Byron Meredith, III, Harmon T. Smith, Jr., Chapter 7 Trustee, Gainesville, GA, Kathryn R. Norcross, F.D.I.C., Washington, DC, for appellee.

Before ANDERSON and DUBINA, Circuit Judges, and ESCHBACH *, Senior Circuit Judge.

---

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designa-

ANDERSON, Circuit Judge:

## I. INTRODUCTION

In this case of first impression, we address the propriety of substantive consolidation of the estates of debtors who are spouses. This appeal arises from the district court's affirmance of the bankruptcy court's order substantively consolidating estate of debtor Ida V. Reider with that of her husband. For the reasons that follow, we reverse the judgment of the district court.

## II. FACTS

A corporation owned by Ida and James Reider operated a horse breeding business, Clermont Farms, Inc., using land owned by Ida Reider. The Reider's primary stud, Mastercard, died, and James Reider entered into an agreement with Jack Johnson to buy a replacement stud, Magnum T.I. Johnson arranged for Clermont Farms through its president James Reider to borrow $250,000 from Florida Center Bank ("FCB"). James Reider personally guaranteed the loan. Johnson was involved in several bank fraud schemes with the president of FCB, Mr. Justice, and never paid his portion of the purchase price for the stud. The arrangement concerning the horse purchase apparently formed part of a larger agreement between Johnson and Reider because Reider relayed most of the funds from the loan to Johnson so that Johnson's father's horse farm, in which Johnson had some interest, could be improved as part of a cooperative venture with Clermont Farms. Without funds and without a horse, the Reiders on December 12, 1985, filed a joint Chapter 11 bankruptcy petition, which was subsequently converted to a Chapter 7 proceeding.

FCB failed in April, 1986, and FDIC acquired the claim against James Reider in a purchase and assumption transaction. Forming the basis for the claim was the personal guarantee executed by James Reider the day that he signed the corporate loan papers. On the list of personal assets Reider tendered to bank officials was the farm land

tion.

owned by Reider's wife Ida who had inherited the property from her mother. On May 23, 1988, the farm was sold by the trustee for $400,000. On July 13, 1988, the FDIC filed a proof of claim for $320,978.58, to which the Trustee objected. In an initial adversary proceeding contesting the allowance of FDIC's claim, James Reider asserted that he never executed the personal guarantee. A handwriting expert testified otherwise, and the bankruptcy court agreed. In that prior proceeding, three attacks were mounted against the FDIC's claim: 1) late filing, FDIC having waited two years after taking over FCB before filing a claim; 2) absence of consideration due to fraud; and 3) no personal liability. The argument concerning the absence of personal liability centered on Reider's testimony that he had not knowingly signed the guarantee. The bankruptcy court overruled the Trustee's objection and allowed the FDIC's claim on July 9, 1990. The district court affirmed this decision on August 27, 1991.

In a December 15, 1988, order relating to exemptions, the bankruptcy court held that the real estate was titled solely in the name of Mrs. Reider. In denying any exemption for Mr. Reider, the court held that his status as spouse and his assertion of financial contributions to the property were insufficient to create an enforceable equitable interest in the property.

The record on appeal in this case reflects that the first mention in this case of the concept of substantive consolidation came in October, 1990. On September 25, 1990, the Reiders had filed an amendment to Schedule B–4, the purpose of which was to seek an increased exemption. In response thereto, FDIC on October 11, 1990, argued for the first time in this case that because the case had been filed as a joint case by two spouses, because the trustee had intermingled the funds, because the debtors had not affirmatively set out a breakdown of the separate assets and liabilities of each estate, and because the assets and liabilities of the two debtors were so intermingled that they could not be separated, a substantive consolidation had in fact resulted. On October 25, 1990, debtors responded to FDIC's attempt to gain

distribution of the funds, arguing that any order of distribution would have to consider the funds of each of the individual estates, and that the estate of Mrs. Reider could be distributed only to the creditors of the estate of Mrs. Reider and not to any other parties. On November 5, 1990, the debtors filed a formal motion to require separate distribution of each estate, and the accompanying brief responded at length on the substantive consolidation issue. On November 20, 1990, FDIC filed a further brief on the issue. On January 28, 1991, the Reiders filed a further brief on the issue, and filed an amended schedule separating the assets and liabilities of the two estates. On Feb. 5, 1991, the FDIC filed a final brief on the issue.

On December 20, 1991, the bankruptcy court issued an order substantively consolidating the two estates. The court also denied the motion to increase Ida Reider's exemptions because she had already received the one exemption to which she was entitled. The court sua sponte reconsidered its prior order denying James Reider's claim for exemption and allowed him a $5,400 exemption to be paid out of the proceeds of the property. The district court affirmed both issues. Mrs. Reider appeals. We reverse.

## III. STANDARD OF REVIEW

■ Because the district court in reviewing the decision of a bankruptcy court functions as an appellate court, we are the second appellate court to consider this case. *Capital Factors, Inc. v. Empire for Him, Inc.*, 1 F.3d 1156, 1159 (11th Cir.1993). Thus, this Court's review with regard to determinations of law, whether made by the bankruptcy court or by the district court, is de novo. *Equitable Life Assurance Soc. v. Sublett*, 895 F.2d 1381, 1383 (11th Cir.1990). The district court makes no independent factual findings; accordingly, we review solely the bankruptcy court's factual determinations under the "clearly erroneous" standard. *Rush v. JLJ Inc.*, 988 F.2d 1112, 1116 (11th Cir.1993); Bankr.Rule 8013; Bankr.Rule 7052. Pursuant to Section 302(b) and Rule 1015(b), a bankruptcy court may in exercising its equitable discretion order substantive consolidation of cases involving two related debtors. 11 U.S.C. § 302(b); Rule 1015(b).

Thus, we review an order of substantive consolidation for abuse of discretion. *In re Giller,* 962 F.2d 796, 799 (8th Cir.1992).

## IV. DISCUSSION

### A. *Substantive Consolidation*

In arguing that the bankruptcy court erred in ordering substantive consolidation, appellant argues that joint administration should not alter the separate nature of the estates created by bankruptcy or constitute a factor for consideration in ordering substantive consolidation. For the reasons that follow, we conclude that the courts below applied incorrect legal standards and that it would be an abuse of discretion to order substantive consolidation on the record in this case.[1]

Section 302[2] of the Bankruptcy Code provides that spouses may file joint cases. 11 U.S.C. § 302(a). After the commencement of a joint case, the court shall determine the extent, if any, to which the debtors' estates shall be consolidated. 11 U.S.C. § 302(b). Because this case presents an issue of first impression among the circuits and has been addressed by few bankruptcy decisions, we begin our analysis with an overview of the development of substantive consolidation case law.

1. Historical background of the *Eastgroup* analysis

Substantive consolidation traces its roots to the Bankruptcy Act of 1898. The Act then contained no express statutory authorization for consolidation, either generally or in the case of spouses.[3] Instead, the authority to order substantive consolidation was implied from the bankruptcy court's general equitable powers. *See Pepper v. Litton,* 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939) ("courts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity"). In 1940, the Supreme Court gave its tacit approval to this equitable power to substantively consolidate two estates. *Sampsell v. Imperial Paper & Color Corp.,* 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293 (1940).[4] Early decisions in the corporate context applied essentially an alter ego or pierce the corporate veil test in assessing the propriety of substantive consolidation. *See, e.g., Fish v. East,* 114 F.2d 177 (10th Cir.1940); *Stone v. Eacho (In re Tip Top Tailors, Inc.),* 127 F.2d 284 (4th Cir.), *cert. denied,* 317 U.S. 635, 63 S.Ct. 54, 87 L.Ed. 512 (1942); *Maule Industries, Inc. v. Gerstel,* 232 F.2d 294 (5th Cir.1956). Subsequently, a series of decisions from the Second Circuit articulated the contours of substantive consolidation which continue to guide current case law in this area. *See In re Continental Vending Machine Corp.,* 517 F.2d 997 (2d Cir.1975); *In re Flora Mir Candy Corp.,* 432 F.2d 1060 (2d Cir.1970); *Chemical Bank New York Trust Co. v. Kheel,* 369 F.2d 845 (2d Cir.1966); *Soviero v.*

1. We resolve the question of appellate jurisdiction in favor of allowing the appeal to proceed.

2. Section 302 provides:

   § 302 Joint cases.
   (a) A joint case under a chapter of this title is commenced by the filing with the bankruptcy court of a single petition under such chapter by an individual that may be a debtor under such chapter and such individual's spouse. The commencement of a joint case under a chapter of this title constitutes an order for relief under such chapter.
   (b) After the commencement of a joint case, the court shall determine the extent, if any, to which the debtors' estates shall be consolidated.
   11 U.S.C. § 302.

3. Section 302 of the Code by providing for joint petitions and discretionary consideration of consolidation effects change from prior law under the Act insofar as the Act made no express provision for the filing of joint petitions or for substantive consolidation of the spouses' estates. Under common law and the laws of most states at the turn of the century, women could not incur debt or own personal property, thus obviating the need for joint bankruptcy filings. *See* 1 *Collier on Bankruptcy* § 4.11 (14th ed. 1974).

4. In *Sampsell,* the Court upheld the bankruptcy referee's consolidation of the estate of the individual debtor with the assets of the debtor's corporation which was wholly owned by the debtor and his family. The Court was concerned that a creditor of the corporation who had some knowledge of the attempted fraudulent conveyance of the debtor's assets to the corporation might unfairly profit, absent consolidation. In upholding consolidation, the Court noted that the "power of the bankruptcy court to subordinate claims or to adjudicate equities arising out of the relationship between the several creditors is complete." 313 U.S. at 219, 61 S.Ct. at 907.

*Franklin National Bank of Long Island,* 328 F.2d 446 (2d Cir.1964). Because of their continued importance, we examine each of these decisions in turn.

In *Soviero v. Franklin National Bank of Long Island,* 328 F.2d 446 (2d Cir.1964), the evidence established that one bankrupt corporation had commingled funds with its affiliates and flagrantly disregarded corporate forms.[5] 328 F.2d at 447. The court concluded that the claims of the individual corporate entities for property also claimed by the corporation's debtors were without merit because the affiliates were mere instrumentalities of the bankrupt, lacking an independent existence. *Id.* at 448. Instead of relying upon the traditional alter ego theory, the court emphasized the injustice to creditors which would result were the separate corporate entities recognized. *Id.* Thus, it was not simply the commingling of assets and flagrant disregard of corporate forms which led to consolidation, but the injustice to creditors which would result if consolidation were not permitted. The court's reference to *Stone v. Eacho,* 127 F.2d 284 (4th Cir.), *cert. denied,* 317 U.S. 635, 63 S.Ct. 54, 87 L.Ed. 512 (1942) suggests that the injustice to creditors inquiry is central: where consolidation may be otherwise warranted, creditors who knew of the close association between bankrupt and affiliate may be estopped to assert any prejudice caused by consolidation. *See* 127 F.2d at 288.

In the subsequent decision of *Chemical Bank New York Trust Co. v. Kheel,* 369 F.2d 845 (2d Cir.1966), the Second Circuit upheld consolidation of seven corporate debtors involved in the shipping industry where all the corporations were owned or controlled by one man, and all were operated as a single unit with common directors and stockholders. 369 F.2d at 846. In addition to ignoring corporate formalities, the debtors had commingled funds and conducted intercorporate loan transactions which they had failed to record sufficiently on the separate books of the various debtors. *Id.* Thus, the court held that "where the interrelationships of the group are hopelessly obscured and expense necessary even to attempt to unscramble them so substantial as to threaten the realization of any net assets for all the creditors," consolidation was mandated. *Id.* at 847. The court emphasized the existence of a critical factor not present in *Soviero,* "the expense and difficulty amounting to a practical impossibility of reconstructing the financial records of the debtors to determine intercorporate claims, liabilities and ownership of assets." *Id.* The court rejected the argument that *Soviero* 's holding required a showing in every case that a creditor knowingly dealt with the debtors as a unit and relied on the collective assets for payment. *Id.* Rather, implicit in the court's decision was the idea that a creditor may oppose consolidation on the basis of its reliance upon the separate credit and assets of one of the debtors. 369 F.2d at 848 (Friendly, J. concurring).

■ Distilling *Soviero* and *Kheel,* two central themes emerge. First, disregard of corporate formalities and commingling of assets may indicate substantive consolidation is appropriate. This follows from the recognition that there is a substantial identity between the debtors, with one entity exercising ultimate control over the assets and the other entities operating as mere instrumentalities. Second, consideration of possible harm or injustice to the creditors is determinative of the propriety of ordering substantive consolidation. Harm or injustice to the creditors may result where unscrambling the affairs of the debtors would threaten the realization of assets. On the other hand, a creditor may demonstrate that injustice would result in the form of a diminished share of the assets were consolidation ordered, due to the creditor's reliance upon the separate credit and assets of one of the entities.

The Second Circuit directly addressed this latter proposition in *In re Flora Mir Candy*

---

5. The evidence established that one bankrupt corporation had received all sale proceeds generated by its affiliates, maintained all inventories and only arbitrarily assigned inventory to its affiliates at year's end, received all bills and paid all supplies for all of the corporate debtors, and paid all labor charges, advertising charges, union dues, insurance and accounting expenses for each corporation, and then arbitrarily charged each affiliate at the end of the year. 328 F.2d at 447.

*Corp.*, 432 F.2d 1060 (2d Cir.1970). One parent corporation and twelve affiliates or subsidiaries filed for individual Chapter XI relief. 432 F.2d at 1061. Despite a multitude of intercorporate transactions, the affairs of one affiliate could be readily disentangled because it ceased operating before the transactions occurred. Noting that consolidation "is no mere instrument of procedural convenience ... but a measure vitally affecting substantive rights," the court held that substantive consolidation would be inequitable, even though most creditors had treated the debtors as a single entity. 432 F.2d at 1062–63. In so holding, the court stated:

> 'The power to consolidate should be used sparingly because of the possibility of unfair treatment of creditors of a corporate debtor who have dealt solely with that debtor without knowledge of its interrelationship with others.'

432 F.2d at 1062–63 (quoting *Kheel, supra,* 369 F.2d at 847). Thus, harm to one set of creditors sufficiently outweighed the possible benefits of consolidation for other creditors.

The importance of the inquiry into the relative harm to creditors was underscored in the final decision in this line of cases, *In re Continental Vending Machine Corp.,* 517 F.2d 997 (2d Cir.1975). Upon a weighing of the relative harm to each group of creditors, the court upheld a plan of reorganization which permitted consolidation of the unsecured creditors' claims but denied consolidation of the secured creditors' claims. Reasoning that the inter-entity transfers that had prejudiced the claims of many unsecured creditors had not implicated or diminished the value of lien property, the court concluded that consolidation of secured claims was unnecessary because the class had not been harmed. 517 F.2d at 1001. In emphasizing the showing of harm required for consolidation, the court noted that "the inequities it [consolidation] involves must be heavily outweighed by practical considerations such as

the accounting difficulties (and expense) which may occur...." *Id.* Thus, creditors must make a strong showing that harm will occur absent consolidation.

In sum, this line of decisions suggested a two-fold inquiry for ordering substantive consolidation. First, substantial identity of the entities must be demonstrated by the absence of corporate formalities or by commingling of assets. Second, there must be a demonstration that harm to the creditors will result without consolidation. This heavy showing may be made by demonstrating that the affairs of the entities are hopelessly scrambled, making disentanglement prohibitively expensive. Alternatively, there may be a showing that some creditors will inequitably receive a lesser share of the assets if consolidation is permitted. The inequity arises from these creditors' reliance upon the separate credit and assets of one entity. Absent such reliance, these creditors would be estopped from asserting prejudice from the proposed consolidation.

### 2. The *Eastgroup* analysis

▉ From these precepts, two similar but not identical tests have evolved for assessing the propriety of substantive consolidation in the corporate context. *See In re Augie/Restivo Baking Co., Ltd.,* 860 F.2d 515 (2d Cir. 1988); *Drabkin v. Midland–Ross Corp. (In re Auto–Train Corp.),* 810 F.2d 270 (D.C.Cir. 1987). This Circuit adopted the D.C. Circuit's approach in *Eastgroup Properties v. Southern Motel Assoc., Ltd.,* 935 F.2d 245 (11th Cir.1991). In *Eastgroup Properties,* this Circuit set forth the following analysis for governing substantive consolidation of corporate entities. Pursuant to the general equitable power conferred by section 105 [6] of the Bankruptcy Code, a court may order substantive consolidation of corporate entities upon an evaluation of "whether 'the economic prejudice of continued debtor separateness' outweighs 'the economic prejudice

---

**6.** Section 105 provides in pertinent part:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed

to preclude the court from, *sua sponte,* taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent any abuse of process....

11 U.S.C. § 105.

of consolidation.' " 935 F.2d at 249 (quoting *In re Snider Bros., Inc.*, 18 B.R. 230, 234 (Bankr.D.Mass.1982)). A court accordingly must analyze whether " 'consolidation yields benefits offsetting the harm it inflicts on objecting parties.' " *Id.* (quoting *Drabkin v. Midland–Ross Corp. (In re Auto-train Corp.)*, 810 F.2d 270, 276 (D.C.Cir.1987)). Under this analysis, the proponent of a motion for substantive consolidation must demonstrate: (1) there is substantial identity between the entities to be consolidated; and (2) consolidation is necessary to avoid some harm or to realize some benefit. 935 F.2d at 249. Upon this demonstration, a presumption arises " 'that creditors have not relied solely on the credit of one of the entities involved.' " *Id.* (quoting *Matter of Lewellyn*, 26 B.R. 246, 251–52 (Bankr.S.D.Iowa 1982)). Once the prima facie showing of substantial identity and harm or benefit is made, the burden shifts to an objecting creditor to show: (1) it has relied on the separate credit of one of the entities to be consolidated; and (2) it will be prejudiced by substantive consolidation. 935 F.2d at 249.[7]

■ The Second Circuit has adopted an alternative test in *In re Augie/Restivo Co., Ltd.*, 860 F.2d 515 (2d Cir.1988). The inquiry focuses on two factors: (1) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit; or (2) whether the affairs of the debtors are so entangled that consolidation will benefit all creditors. 860 F.2d at 518. The presence of either factor justifies substantive consolidation. The Second Circuit recently reaffirmed this test in the 1992 case of *FDIC v. Colonial Realty Co.*, 966 F.2d 57, 61 (2d Cir.1992).

### 3. Applicability of *Eastgroup* to the spousal context

■ Few decisions have addressed or even discussed substantive consolidation in the context of debtor spouses. *See In re Chan*, 113 B.R. 427 (D.N.D.Ill.1990); *In re Knobel*, 167 B.R. 436 (Bankr.W.D.Tex.1994); *In re Steury*, 94 B.R. 553 (Bankr.N.D.Ind.1988); *In re Birch*, 72 B.R. 103 (Bankr.D.N.H.1987); *In re Scholz*, 57 B.R. 259 (Bankr.N.D.Ohio 1986); *In re Barnes*, 14 B.R. 788 (Bankr. N.D.Tex.1981). Three cases have formulated the following rule: "[c]ases should be consolidated where the affairs of the husband and wife are so intermingled that their respective assets and liabilities cannot be separated." *Chan, supra*, at 428; *Birch, supra*, at 106; *Barnes, supra*, at 790. This inquiry represents one of the factors articulated by the Second Circuit in *In re Augie/Restivo* and is encompassed within the second prong of the inquiry adopted by this court in *Eastgroup*. This inquiry is entirely consonant with the concerns set forth in *Eastgroup* but should not be the sole test. As recognized by the court in *Steury*, the ultimate answer to the question of substantive consolidation "requires the court to weigh 'the economic prejudice of continued debtor separateness versus the economic prejudice of consolidation.' " *Steury*, 94 B.R. at 554 (quoting *In re Snider Bros., Inc.*, 18 B.R. 230, 234 (Bankr.D.Mass. 1982)). *Accord Eastgroup*, 935 F.2d at 249. Thus, questions concerning substantive consolidation "are to a great degree sui generis ... [P]recedents are of limited value. Instead, the Court must determine what equity requires." *In re Augie/Restivo Banking Co., Ltd.*, 84 B.R. 315, 321 (Bankr.E.D.N.Y.1988).

■ With this caveat, we adopt the analysis of substantive consolidation set forth in *Eastgroup* as modified by the following considerations for the spousal context. In assessing the propriety of substantive consolidation, a court must determine: (1) whether there is a substantial identity between the assets, liabilities, and handling of financial affairs between the debtor spouses; and (2) whether harm will result from permitting or denying consolidation. In assessing the extent of substantial identity, relevant factors[8]

---

7. The Eighth Circuit has adopted a similar formulation. *In re Giller*, 962 F.2d 796 (8th Cir. 1992). The court articulated three factors to consider: (1) the necessity of consolidation due to the interrelationship among the debtors; (2) whether the benefits of consolidation outweigh the harm to creditors; and (3) prejudice resulting from not consolidating the debtors. *Id.* at 799.

8. Because the factors suggested in *Eastgroup* were developed in the context of corporate proceedings, most are of little or no relevance in the spousal context. *In re Birch*, 72 B.R. 103, 106

will include the extent of jointly held property and the amount of joint-owed debts. H.R. No. 95–595, 95th Cong., 1st Sess. 321 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 32 (1978) U.S.Code Cong. & Admin.News 1978, pp. 5787, 5818, 5963, 6277. Upon a determination of substantial identity, the court must then analyze the harm attendant to a failure to consolidate. Where administrative difficulties in disentangling the spouses' estates makes it prohibitively expensive or where disentanglement is otherwise impracticable, consolidation should ordinarily be permitted. A creditor may also demonstrate that it will be unfairly prejudiced by a failure to consolidate and may interpose the fraud or bad faith of the debtors as a defense. To prevent consolidation, a creditor may demonstrate that it has relied on the separate credit and assets of one of the spouses and would be harmed by a consolidation of assets. The burden is upon the proponent of a motion for consolidation and is exacting. *See Knobel, supra,* 167 B.R. at 441 n. 10. Ultimately, the court must be persuaded that " 'the creditors will suffer greater prejudice in the absence of consolidation than the debtors (and any objecting creditors) will suffer from its imposition.' " *Steury, supra,* 94 B.R. at 554–55 (quoting *Holywell Corp. v. Bank of New York,* 59 B.R. 340, 347 (D.S.D.Fla.1986)). Substantive consolidation should be invoked "sparingly" where any creditor or debtor objects to its use. *See Chemical Bank New York Trust Co. v. Kheel,* 369 F.2d 845, 847 (2d Cir.1966).

■ Great care must be taken to avoid confusion between the attributes of joint administration and indicia supporting substantive consolidation. The filing of a joint petition by a husband and wife does not result in the automatic substantive consolidation of the two debtors' estates. *In re Ageton,* 14 B.R. 833, 835 (9th Cir. BAP 1981); *In re Chandler,* 148 B.R. 13, 15 (Bankr.E.D.N.C.1992); *In re Masterson,* 55 B.R. 648, 649 (Bankr. W.D.Pa.1985). Joint administration is de-

signed for the ease of administration and to permit the payment of only one filing fee. *In re Crowell,* 53 B.R. 555, 557 (Bankr. M.D.Tenn.1985); *In re Stuart,* 31 B.R. 18 (Bankr.D.Conn.1983). Joint administration is thus a procedural tool permitting use of a single docket for administrative matters, including the listing of filed claims, the combining of notices to creditors of the different estates, and the joint handling of other ministerial matters that may aid in expediting the cases. Rule 1015, Advisory Committee Note (1983). Used as a matter of convenience and cost saving, it does not create substantive rights. *Unsecured Creditors Committee v. Leavitt Structural Tubing Co.,* 55 B.R. 710, 712 (D.N.D.Ill.E.D.1985). By contrast, substantive consolidation "is no mere instrument of procedural convenience . . . but a measure vitally affecting substantial rights." *In re Flora Mir Candy Corp.,* 432 F.2d 1060, 1062 (2d Cir.1970). Thus, conduct by the debtor spouses in jointly administering their estates should be accorded relatively little weight in assessing the propriety of substantive consolidation.

---

4. Analysis

■ Applying these precepts to the case at hand, we conclude that the bankruptcy court erred by placing undue reliance upon the fact that the debtor spouses' estates had been jointly administered. On the question of substantial identity, the bankruptcy court incorrectly accorded determinative weight to the debtors' listing of assets and liabilities. From this record, we can discern no facts which would warrant a finding of substantial identity. FDIC argued in the court below that the trustee had commingled the funds of the two estates. However, it is clear that the proper allocation of the funds can be readily made. The funds attributable to the sale of Mrs. Reider's real estate are readily identifiable. Similarly, the record indicates no barrier to the separate identification of the lia-

(Bankr.D.N.H.1987). No set of factors should be mechanically applied, *In re Donut Queen, Ltd.,* 41 B.R. 706, 709 (Bankr.E.D.N.Y.1984), and no factors are necessarily dispositive. *In re DRW Property Co. 82,* 54 B.R. 489, 495 (Bankr.N.D.Tex.

1985). Rather, all of the circumstances surrounding the particular case should be examined to arrive at an equitable result using the framework we set forth today.

bilities of each spouse. For example, it is clear that FDIC's claim is solely against Mr. Reider. FDIC has pointed, neither in the courts below, nor on appeal, to any asset or liability which cannot be readily identified with the proper estate. As mentioned above, the courts below erroneously relied upon the actions of debtors and debtors' counsel during the bankruptcy proceedings in scheduling the assets and liabilities without separation thereof, and in administering the estates jointly. Rather, the proper focus should have been primarily upon the debtors' conduct of the affairs of their business. The only fact which we can discern from the record which points in the direction of any substantial identity or commingling of the assets of the two spouses during the conduct of their business was the fact that Mr. Reider unilaterally listed the real estate on his personal financial statement at the time he obtained the loan which FDIC has inherited. However, the evidence of any reasonable reliance by FDIC's predecessor upon this real estate is weak. The record reveals that FCB obtained as collateral for the loan the horses and certain equipment. The record is clear that FCB did not take a mortgage on the real estate, and there is no indication in the record that FCB examined the title of the real estate.[9] We believe very little weight could be placed upon the fact that the corporation's horse breeding business was conducted on the real estate; the practice of a farm corporation operating on real estate owned by individuals associated with the corporation is too common a practice to constitute a significant indication of substantial identity. Having failed to demonstrate any substantial commingling of the real estate during the operation of the business, and having adduced as evidence pointing towards substantial identity only the fact that Mr. Reider included the real estate on his personal financial statement, we conclude that this record could not be the basis of a finding of substantial identity.

Turning to an analysis of the harm inquiry articulated in *Eastgroup*, we note that the bankruptcy court made a conclusory finding that as between the debtors and FDIC, the equities lie with FDIC. After a careful review of the record on appeal, we conclude that the record could not support a finding that the equities lie in favor of FDIC.[10] The only factor favoring FDIC which we can discern from the record on appeal is the fact that Mr. Reider listed the real estate on his personal financial statement. However, we conclude that that factor is clearly over balanced by the numerous equities favoring Mrs. Reider. We noted above that the significance of Mr. Reider's listing the real estate is reduced by the failure of the record to indicate any strong evidence that FCB placed reasonable reliance upon the real estate. As noted, FCB took no mortgage. Moreover, the ownership of the land was obviously a matter of public record at all relevant times, and FCB, had it been interested in the real estate, could readily have examined the title, as is the common practice of lenders relying upon real estate. Significantly, there is no evidence in the record that Mrs. Reider acquiesced in, or even knew of, the fact that Mr. Reider had listed the real estate on a financial statement. The record also reveals the following equities favoring Mrs. Reider. The real estate is in fact titled solely in her name, and is her separate property. This fact was publicly available for any interested party. The loan which FDIC inherited was to a corporation, and FDIC's claim against Mr. Reider is based upon a personal guaranty. FDIC has pointed to no evidence that it has a claim against Mrs. Reider; in fact, FDIC has never suggested in this case that it has such a claim.

Finally, we address a factor considered by both the bankruptcy court and the district court, i.e., statements by the debtors' attorney during a bankruptcy court hearing implying an understanding on the part of counsel that the property was being treated as

---

9. The record is unclear as to whether Mrs. Reider had any appreciable equity in the real estate at the time. It is clear that the increased value attributable to the later discovery of sand and gravel deposits was not then contemplated.

10. Neither party suggests that equities with respect to any other creditor or party (other than FDIC and the Reiders) have relevance in this case.

joint.[11] We noted above that the bankruptcy court erred by placing inappropriate weight upon the fact of the joint petition and administration. However, under certain circumstances, representations of counsel and the manner of the conduct of litigation could operate to bar a party from raising an issue in an untimely fashion. But we conclude that the record in this case could not support a conclusion that Mrs. Reider should be barred from objecting to a substantive consolidation of the two estates. It is true that a joint petition was filed. As noted above, however, the filing of a joint petition does not indicate substantive consolidation. The same is true of the fact of joint administration. Notwithstanding the joint petition and joint administration, the law set out above is clear that the two estates remain separate until ordered consolidated by the court pursuant to § 302(b). The burden of moving for consolidation and demonstrating consolidation is upon the FDIC. FDIC never formally moved for consolidation of the two estates in this case, and its first mention of consolidation in brief was met by a prompt response and objection on behalf of Mrs. Reider. The first mention of substantive consolidation in this record appears in FDIC's October 11, 1990, brief. Counsel for Mrs. Reider filed a prompt response on October 25, 1990, followed by a formal motion to separate the estates on Nov. 5, 1990. That motion was accompanied by a lengthy brief discussing the substantive consolidation issue. Follow-up briefs were filed by both parties during the next couple of months. Thus, the burden was upon FDIC to move for consolidation, and at the first mention thereof, a full re-sponse and objection was promptly forthcoming on behalf of Mrs. Reider.

It is true that there were one or more representations by counsel for the Reiders, during hearings on other matters, that gave rise to a weak inference that counsel understood the two estates to be joint. Several factors persuade us that those representations could not constitute the basis for barring any objection by Mrs. Reider to substantive consolidation of the two estates. The issues being litigated at the time were different from the substantive consolidation issue. The overall issue being litigated at the relevant time was whether or not FDIC's late claim should be allowed at all. The objections which the Reider's were asserting at the time were valid objections which, if successful, would have eliminated the FDIC claim against both Mr. Reider and Mrs. Reider. FDIC's argument that Mrs. Reider should have raised the issue of her separate estate misplaces the burden; as noted above, the estates were legally separate until ordered consolidated, and the burden was upon FDIC to move for consolidation.

There is a reasonable inference from the record that neither party at that time recognized the significance of the fact that the estates were separate. If FDIC recognized that fact, it could have and should have raised the issue, litigated it, and thus possibly avoided unnecessary expenses in litigating other issues that might be futile if the estates were found to be separate. Similarly, Mrs. Reider could have brought the issue to the court's attention. However, we cannot conclude that the equities of this mutual failure point in the direction of FDIC. As noted, the burden of moving for consolidation is

11. Counsel's statements could give rise to different inferences. On the one hand, they give rise to some inference that the parties themselves treated the property as jointly owned during the previous period of time of their operation of the business and were continuing to treat the property as jointly owned. Such an inference of course would be relevant to the substantial identity issue. However, we conclude that any such inference is extremely weak in light of the casual nature of the remarks and the context of the statements as discussed in the text below, and in light of the clear evidence that the property was in fact separately owned by Mrs. Reider, and the lack of contrary evidence. Adding this weak inference to the only other evidence favoring FDIC, i.e., Mr. Reider's unilateral listing of the land on his financial statement, we conclude that this record could not support a finding of substantial identity.

In fact, we think the more reasonable inference from counsel's statements was that counsel did not at that particular time recognize the significance of the fact that the land was owned solely by Mrs. Reider. This interpretation is bolstered by the context, i.e., the issues being litigated at that point. This interpretation is also supported by the fact that counsel for Mrs. Reider promptly responded and objected at the first mention of substantive consolidation by FDIC.

upon FDIC. Furthermore, the fact that the real estate was owned solely by Mrs. Reider was apparent on the face of the bankruptcy court record. The bankruptcy court had expressly so held in its December 15, 1988, order. This fact was noted again in the bankruptcy court's July 6, 1990, order, at 3 n. 2. FDIC should have known that the real estate was solely owned by Mrs. Reider. We have noted that FDIC could not rely upon the mere fact of the joint petition and joint administration. FDIC should also have known that under the law the estates were separate until ordered consolidated under § 302(b). In light of FDIC's burden with respect to this issue, and in light of all the facts appearing in this record on appeal, we conclude that the record would not support a finding that FDIC could reasonably rely upon the casual remarks in this record made by counsel during litigation of other issues.

5. Conclusion on Substantive Consolidation

In summary, in light of the weak evidence of substantial identity and the strong contrary evidence that the real estate was separate in fact and readily known to be, and in light of the strong balance of equities in favor of Mrs. Reider, we conclude that the record on this appeal could not support a finding of substantive consolidation, nor could the record support a finding that Mrs. Reider's objection to substantive consolidation is barred. Thus, it was an abuse of discretion to order substantive consolidation.

B. *Other Issues on Appeal*

The other arguments asserted by FDIC on appeal in defense of the judgment ordering consolidation of the two estates are without merit and warrant no discussion. In addition to challenging the substantive consolidation judgment, appellant also raised on appeal an issue with respect to an exemption. We believe that issue is moot in light of our disposition of the substantive consolidation issue; however, to the extent it is not moot, we find appellant's arguments with respect to that issue to be without merit and to warrant no discussion.

Accordingly, the judgment of the district court is

REVERSED.