In re **EAGLE–PICHER INDUSTRIES, INC., et al., Debtors.**

**CENTRAL CLAIMS SERVICES, INC., BDS Special Opportunities Fund L.P. and Ross Investment Partners, Plaintiffs,**

v.

**EAGLE–PICHER INDUSTRIES, INC., Daisy Parts, Inc., Transicoil, Inc., Michigan Automotive Research Corporation, EDI, Inc., Eagle–Picher Minerals, Inc., Eagle–Picher Europe, Inc., and Hillsdale Tool & Manufacturing Co., Defendants.**

Bankruptcy No. 1–91–00100.
Adv. No. 95–1105.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

March 14, 1996.

Robert Goering, Cincinnati, OH, for plaintiffs.

D. Darron, Stephen Karotkin, New York City, for Eagle Picher Ind., Inc.

Kevin Irwin, Cincinnati, OH.

## DECISION

BURTON PERLMAN, Bankruptcy Judge.

This adversary proceeding is related to Consolidated Case Nos. 1–91–00100, In re Eagle–Picher Industries, Inc., et al., Chapter 11 debtors. Plaintiffs in this adversary proceeding in their complaint identify themselves as among the largest unsecured creditors of Hillsdale Tool and Manufacturing Company ("Hillsdale"), a debtor-subsidiary of Eagle–Picher Industries, Inc. ("EPI"). Defendants are EPI, together with the other debtor-subsidiary entities who are debtors-in-possession, the cases for which are included within Consolidated Case No. 1–91–00100. The relief which the plaintiffs-creditors seek in this adversary proceeding is a declaratory judgment or an injunction which would preclude the use of substantive consolidation of Hillsdale with the remaining defendants in any plan of reorganization unless creditors of Hillsdale are paid 100% by the terms of the plan. In addition to their answer, defendants have filed a counterclaim in which they request that the court order "the estates of the Debtors substantively consolidated for purposes of the Plan."

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding arising under 28 U.S.C. § 157(b)(2)(A).

In their pretrial statement, plaintiffs call our attention to our holding in *In re Silver Falls Petroleum Corp.*, 55 B.R. 495 (Bankr.S.D.Ohio 1985) where this court held that debtors bear the burden of proof on the justifiability of substantive consolidation. That holding applies in this proceeding notwithstanding that it is the debtors which are defendants here. Further, there is by this time no question that the bankruptcy court has the power to order substantive consolidation. *In re Giller*, 962 F.2d 796, 799 (8th Cir.1992); *In re Reider*, 31 F.3d 1102, 1105 (11th Cir.1994); *In re Auto–Train Corp.*, 810 F.2d 270, 276 (D.C.Cir.1987); *Eastgroup*

*Properties v. Southern Motel Assoc., Ltd.,* 935 F.2d 245, 248 (11th Cir.1991); *F.D.I.C. v. Colonial Realty Co.,* 966 F.2d 57, 59 (2nd Cir.1992); *Stone v. Eacho,* 127 F.2d 284 (4th Cir.1942).

A review of the case law dealing with substantive consolidation makes it clear that decisions on the subject are fact intensive, and decisions are made on a case-by-case basis. 5 Collier on Bankruptcy (15th ed.) § 1100.06 at p. 1100–35. Because the cases so much turn on their individual facts, we find that the lists presented by the several courts in their decisions, of factors which must be present in order to determine the issue of substantive consolidation, are of limited use. This court does find helpful the decision *In re Reider,* 31 F.3d 1102, 1108 (11th Cir.1994). It is helpful because it finds a rationale for decision which is well grounded in case law, and yet is not bound to particular facts. The court in *Reider,* though that is a case involving a fact situation having no resemblance whatever to that before us, undertook a painstaking review of the case law having to do with substantive consolidation. It arrived at the following conclusion:

> From these precepts, two similar but not identical tests have evolved for assessing the propriety of substantive consolidation in the corporate context. *See In re Augie/Restivo Baking Co., Ltd.,* 860 F.2d 515 (2d Cir.1988); *Drabkin v. Midland–Ross Corp. (In re Auto–Train Corp.),* 810 F.2d 270 (D.C.Cir.1987). This Circuit adopted the D.C. Circuit's approach in *Eastgroup Properties v. Southern Motel Assoc., Ltd.,* 935 F.2d 245 (11th Cir.1991). In *Eastgroup Properties,* this Circuit set forth the following analysis for governing substantive consolidation of corporate entities. Pursuant to the general equitable power conferred by section 105 [footnote omitted] of the Bankruptcy Code, a court may order substantive consolidation of corporate entities upon an evaluation of "whether 'the economic prejudice of continued debtor separateness' outweighs the economic prejudice of consolidation.'" 935 F.2d at 249 (quoting *In re Snider Bros., Inc.,* 18 B.R. 230, 234 (Bankr.D.Mass.1982). A court accordingly must analyze whether " 'consoli-

dation yields benefits offsetting the harm it inflicts on objecting parties.'" *Id.* (quoting *Drabkin v. Midland–Ross Corp. (In re Auto–Train Corp.),* 810 F.2d 270, 276 (D.C.Cir.1987)). Under this analysis, the proponent of a motion for substantive consolidation must demonstrate: (1) there is substantial identity between the entities to be consolidated; and (2) consolidation is necessary to avoid some harm or to realize some benefit. 935 F.2d at 249. Upon this demonstration, a presumption arises " 'that creditors have not relied solely on the credit of one of the entities involved.'" *Id.* (quoting *Matter of Lewellyn,* 26 B.R. 246, 251–52 (Bankr.S.D.Iowa 1982)). Once the prima facie showing of substantial identity and harm or benefit is made, the burden shifts to an objecting creditor to show: (1) it has relied on the separate credit of one of the entities to be consolidated; and (2) it will be prejudiced by substantive consolidation. 935 F.2d at 249. [footnote omitted.]

> The Second Circuit has adopted an alternative test in *In re Augie/Restivo Co., Ltd.,* 860 F.2d 515 (2d Cir.1988). The inquiry focuses on two factors: (1) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit; or (2) whether the affairs of the debtors are so entangled that consolidation will benefit all creditors. 860 F.2d at 518. The presence of either factor justifies substantive consolidation. The Second Circuit recently reaffirmed this test in the 1992 case of *FDIC v. Colonial Realty Co.,* 966 F.2d 57, 61 (2d Cir.1992).

It seems to this court that, at least for present purposes, the alternative tests prescribed by the *Reider* court are not materially different, and, on the facts of the case now before this court, lead to the same result.

Remembering that defendants bear the burden of proof in determining whether substantive consolidation is to be ordered, *Reider* teaches what that burden is. We examine first the question whether "there is substantial identity between the entities to be consolidated," that is, Hillsdale and EPI.

Debtors presented documentary evidence in the Stipulation of Facts entered into by the parties, as well as by the testimony of the treasurer of EPI, David Hall. Debtors evidence established that the several debtors in Consolidated Case 1–91–00100 comprise an integrated entity. That is, there are 23 divisions of EPI, eight of which are corporations, while the remaining ones are unincorporated. All are regarded as divisions of EPI. All of the stock of the incorporated divisions is owned by EPI. Among the documents in the Stipulation is a photograph at Hillsdale division headquarters prominently featuring the name and logo of Eagle–Picher. The same is true of the current letterhead and invoice of Hillsdale. Trade creditors of Hillsdale are paid by checks, which refer to Hillsdale as a division of EPI.

Hall has been the chief financial officer of EPI since 1987 and in that capacity supervises the financial persons of the company. He testified that the business of EPI is organized into several groups. The major group is the automotive group which produces 60% of the business of the debtors. The automotive group includes Hillsdale, Plastics Division, Wolverine Gasket Division, Marco Division, and Rubber Molding Division. To demonstrate that corporateness is not material in terms of the organization of EPI, Hall testified that another corporation which is part of EPI is Daisy Parts, Inc. EPI regards Daisy Parts, Inc. as a part of Hillsdale though they are separate corporations. There are annual budget meetings within the automotive group, and Hillsdale and Daisy Parts are not given separate representations, but a single representation. Their revenues are dealt with within EPI as though they were a single enterprise. EPI placed values on its various divisions for the purpose of the disclosure statement in these Chapter 11 cases, but did not set a separate valuation for Daisy Parts, but rather included it with Hillsdale. Hall testified that EPI does not account for Hillsdale or Daisy Parts as a separate entity except as the court requires it. They are not represented as separate entities for any other purpose.

Wayne Wickens is the group executive for the automotive group. He is president of that group, and senior vice-president of EPI. The division managers of the automotive group report to him. The president of Hillsdale is regarded as the division manager of Hillsdale. While election of the division manager and other officers of Hillsdale are the subject of Hillsdale corporate minutes, in fact such officers are selected by the group executive of the automotive group in consultation with the officers of EPI. Those persons comprising the board of directors of Hillsdale actually are designated by a legal person of EPI who asks them to serve. Minutes for the corporation are kept on a pro forma basis. The group executive for the automotive group decides on the compensation for officers of each division, and their salaries are paid by EPI. The members of the board of directors of Hillsdale are EPI office people in Cincinnati. The board of directors of Hillsdale meets only on paper.

Divisions including Hillsdale have no cash. Their cash received from accounts receivable collections are swept by EPI into a central fund every day, and these funds are controlled by the treasurer of EPI. Operations for each division including Hillsdale are funded by deposits made by EPI into an account for the use of the division.

General office charges for each division are only shown in reports to the bankruptcy court because the form requires it. EPI has never asked a division to pay its pro rata share of general office charges. As to intercompany accounts, the way that these work is that no cash changes hands but rather is a running balance shown which is never closed out. Long-term debt charges are not allocated to the divisions. There are no terms for repayment of inter-company balances.

On occasion, for funding purposes, EPI is asked by a division to guarantee its obligations and this has never been refused, nor is it ever refused when EPI requires the guarantee by the pledging of the assets of a division for financing. As to long-term loan obligations, division managers, such as the president of Hillsdale, is not involved in such a transaction. Hall, as chief financial officer, presents any requests for long-term debt proposals to the EPI board of directors, and that board makes the decision about such a

proposal. Such presentations are not made to divisional boards of directors. They simply do not meet.

In 1988, asbestos claims of EPI were so great that the company ran into problems with its lenders. Consequently, a credit facility was created in 1988. A new credit facility had to be negotiated and this was done by EPI. Lenders required that the accounts receivable of all divisions, including Hillsdale, be pledged on that financing transaction, and this was done.

■ The foregoing evidence satisfies the court that defendants have sustained their burden of showing substantial identity between the entities to be consolidated. We reach this conclusion notwithstanding evidence intended by plaintiffs to lead to a different result. The plaintiffs introduced documentary evidence to support their position that Hillsdale and EPI should be treated as separate entities. This included evidence of a separate payroll account, checks with the name "Hillsdale Tool" written to vendors, as well as invoices from those vendors directly to Hillsdale. Additional documentary evidence in support of the plaintiffs' position included the Articles of Incorporation and By-laws of Hillsdale, and copies of minutes recording meetings of Hillsdale directors and officers, and EPI. These minutes showed that Hillsdale had followed corporate formalities by having meetings for purposes such as approving loan guarantees and electing officers. We accept, however, the testimony of Hall that what the minutes reflected were but paper meetings of Hillsdale, and that in fact meetings were not physically held. In addition, as evidence of the separateness of Hillsdale and EPI, the plaintiffs offered a variety of evidence on the existence of separate financial statements of Hillsdale. For example, plaintiffs presented Hillsdale's Michigan Business Tax filings from the years 1986–1993 which included balance sheets identifying the assets and liabilities of Hillsdale apart from those of EPI. Additionally, plaintiffs offered evidence to show that there was a separate bank account for Hillsdale. This was, however, a practice adopted by EPI for the convenience of employees so that they might locally cash their paychecks. The evidence established that the account was funded by EPI. The evidence presented by plaintiffs amounts to nothing more than a showing that EPI carefully preserved the corporate form of Hillsdale in order to secure a tax benefit, and that some measures were adopted for the convenience of employees. The evidence offered by plaintiffs cannot avail them, for it is well established that retention of corporate form for the purpose of securing tax benefits presents no obstacle to substantive consolidation. *Soviero v. Franklin National Bank,* 328 F.2d 446 (2nd Cir.1964).

As to whether consolidation "is necessary to avoid some harm or to realize some benefit," defendants have established this element as well. Debtors together with the Injury Claimants' Committee and the Future Claims Representative, after extended and arduous negotiation, have arrived at and presented to the court a proposed plan of reorganization, an element of which is substantive consolidation of all of the entities in the consolidated case. Eight of the operative divisions of EPI are conducted in corporate form. Clearly, if the relief sought by the present plaintiffs is granted, the same benefit would have to be considered for each of the other corporate divisions and the accommodation reached between debtors and the injury claimants would fall apart. There is no doubt that harm is threatened by the relief here sought by plaintiffs. Further, it is an element of the filed proposed plan that the trust there contemplated be launched initially with a cash fund of $100 million so that the immediate needs of many asbestos claimants in dire straits can be attended to upon confirmation. Diversion of funds for a separate plan for Hillsdale would be detrimental to that effort.

The evidence which we have reviewed above showing substantial identity between Hillsdale and EPI persuades us as well that no reasonable creditor of Hillsdale could believe that it was not dealing with EPI when it dealt with Hillsdale. This conclusion alone is sufficient to warrant a holding that substantive consolidation is justified according to the Second Circuit test as analyzed by the *Reider* court.

If, however, the primary test of the *Reider* court is used, the case is not concluded. Our conclusions that defendants have shown substantial identity between Hillsdale and EPI, and that substantive consolidation of those entities is necessary to avoid some harm, shifts the burden to the present plaintiffs to show that they have relied on the separate credit of Hillsdale *and* that they will be prejudiced by substantive consolidation. The present case requires no extended discussion to show that plaintiffs cannot meet the burden thus imposed upon them. The evidence establishes that plaintiffs in the present case acquired their claims by purchase, that is, they are transferees of the claims of the original creditors who dealt directly with Hillsdale. Plaintiffs have never dealt with Hillsdale, have never extended credit to Hillsdale, and thus certainly cannot say that they relied on the separate credit of Hillsdale. Nor have they presented any evidence by way of the testimony of their transferors that there was reliance on the separate credit of Hillsdale. It is important to notice that no objection to substantive consolidation has been lodged by actual creditors who dealt directly with Hillsdale, nor by the Unsecured Creditors' Committee which represents them.

Nor are plaintiffs more successful in bearing the second part of their burden, prejudice if there is substantive consolidation. The prejudice that they assert is that if a stand-alone plan for Hillsdale were fashioned, the bankruptcy law would require that they be paid 100% on their claims. Plaintiffs established this by the testimony of an accountant. In the plan presented by the consolidated debtors, plaintiffs will receive less than they will under debtors' plan now before the court. As we have seen, prejudice alone, applying the *Reider* test, is insufficient to defeat substantive consolidation, but even if it were, it is our view that in the present case the prejudice advanced by plaintiffs cannot avail them. They purchased their claims with knowledge that a consolidated plan would be presented, that Hillsdale was regarded by EPI as a part of EPI, and that the assets of Hillsdale would be subject to the claims of asbestos claimants. To allow them to upset the plan before the court under these circumstances would be inequitable. It would place these creditors in a better position than their transferors.

This court therefore finds the issues in favor of defendants in this adversary proceeding. The complaint will be dismissed. It is the view of this court that we can grant relief to defendants on their counterclaim only to the extent that issues and parties are dealt with in the present litigation. Accordingly, we find the issues in defendants' counterclaim in favor of defendants, and Hillsdale will be substantively consolidated with EPI.