# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-2816
_____

Samuel W. Boellner; Marilyn R. Boellner

*Appellant*s

v.

James F. Dowden, Chapter 7 Trustee

*Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: April 17, 2015
Filed: May 12, 2015
[Unpublished]

_____

Before WOLLMAN and GRUENDER, Circuit Judges, and GRITZNER,[1] District
Judge.

_____

PER CURIAM.

---

[1]The Honorable James E. Gritzner, United States District Judge for the Southern
District of Iowa, sitting by designation.

Samuel W. Boellner and Marilyn R. Boellner are a married couple who filed separate petitions for Chapter 7 bankruptcy. The bankruptcy court[2] granted the trustee's motion for joint administration and substantive consolidation. We affirm.

When the Boellners filed their bankruptcy petitions on September 25, 2013, they shared a checking account, several credit cards, and a leased car. Their statements of financial affairs indicated that they had jointly withdrawn funds from IRAs—$240,519.00 in 2011 and $210,399.16 in 2012. Together they also owed state and federal taxes, as well as attorney's fees they had incurred defending a civil case. In that case, Clinical Study Centers, John Giblin, Gordon Gibson, and Anthony Johnson obtained a $571,303.96 judgment against the Boellners, a sum for which they were jointly and severally liable. John Giblin also obtained a $325,600.00 judgment against Samuel.

The Boellners lived separately. Marilyn's home was unencumbered and valued at $450,000.00. Samuel's home was subject to a mortgage and in the process of being surrendered to the mortgage holder. The Boellners had separate insurance policies, separate interests in businesses, separate annuities, and separate IRAs, with Samuel owning annuities and IRAs valued at more than $700,000.00. Both had individual credit card debt.

At the hearing on the trustee's motion, the bankruptcy court received in evidence the statements of financial affairs and the original and amended bankruptcy schedules filed by each of the Boellners. The trustee argued that the Boellners' assets, liabilities, and handling of financial affairs were substantially the same. According to the trustee, allowing the Boellners to maintain separate bankruptcy estates would prejudice the creditors because the Boellners could then stack federal and state

---

[2]The Honorable James G. Mixon, late a United States Bankruptcy Judge for the Eastern District of Arkansas.

exemptions, something they could not do if their cases were consolidated. Clinical Studies Center and John Giblin adopted the trustee's position. The Boellners argued that substantive consolidation was not warranted because they had separate assets, separate liabilities, separate IRAs and annuities, and separate monthly expenses.

In response to the bankruptcy court's inquiry why the Boellners had filed separate rather than joint petitions for bankruptcy, their counsel replied that maintaining separate bankruptcy estates would allow Samuel to claim exemptions under federal law and Marilyn to claim exemptions under state law. Substantive consolidation would require the Boellners to choose either federal exemptions or state exemptions. See 12 Collier on Bankruptcy Intro.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2015) ("The general rule under the Bankruptcy Code is that a debtor is permitted to choose between (a) the scheme of federal exemptions prescribed in section 522(d) of the Code or (b) the exemptions available under other federal law and the law of the state in which the debtor is domiciled."). A comparison of the schedules each spouse filed revealed that Samuel claimed his annuities and IRAs as exempt from the bankruptcy estate, see 11 U.S.C. § 522(d), and that Marilyn claimed her home as exempt from the bankruptcy estate, see Ark. Const. art. IX, § 3.

The bankruptcy court ordered substantive consolidation after considering whether the debtors were interrelated, whether the benefit of consolidation outweighed the harm to the creditors, and whether any prejudice would result from allowing the debtors to maintain separate bankruptcy estates. The Boellners appealed to the Bankruptcy Appellate Panel. After the trustee removed the appeal, the district court[3] affirmed the bankruptcy court's order and later denied the Boellners' motion for reconsideration. The question before us on appeal is whether the bankruptcy court abused its discretion in ordering substantive consolidation.

---

[3]The Honorable Brian S. Miller, Chief Judge, United States District Court for the Eastern District of Arkansas.

Substantive consolidation of two bankruptcy estates "means assets and liabilities of both debtors are pooled." In re N.S. Garrott & Sons, 48 B.R. 13, 17 (Bankr. E.D. Ark. 1984). "In assessing the propriety of substantive consolidation, a court must determine: (1) whether there is a substantial identity between the assets, liabilities, and handling of financial affairs between the debtor spouses; and (2) whether harm will result from permitting or denying consolidation." In re Reider, 31 F.3d 1102, 1108 (11th Cir. 1994). "Ultimately, the court must be persuaded that the creditors will suffer greater prejudice in the absence of consolidation than the debtors (and any objecting creditors) will suffer from its imposition." Id. at 1109 (citations and internal quotation marks omitted); see also In re Giller, 962 F.2d 796, 799 (8th Cir. 1992); In re N.S. Garrott & Sons, 48 B.R. at 18.

The Boellners contend that the trustee failed to present evidence sufficient to show that a substantial identity existed between the assets, liabilities, and handling of financial affairs of the debtors. We disagree. The bankruptcy court carefully reviewed the statements of financial affairs and the bankruptcy schedules—the only evidence submitted by the parties—which allowed the bankruptcy court to identify the joint assets and joint liabilities set forth above. In reviewing the evidence, the bankruptcy court remarked on the peculiarity of the claim that Marilyn owned her home, yet Samuel claimed ownership of the couple's household goods. It also noted that the Boellners' separate statements of financial affairs indicated that they had jointly withdrawn funds from IRAs. The evidence presented thus was sufficient to establish substantial identity.[4]

---

[4]We reject the Boellners' contention that the trustee was required to establish that the Boellners' affairs were so intermingled that their respective assets and liabilities could not be separated. To determine substantial identity, the bankruptcy court properly considered "the extent of jointly held property and the amount of joint-owed debt." In re Reider, 31 F.3d at 1109; see also id at 1108-09 n.8 ("No set of factors should be mechanically applied, and no factors are necessarily dispositive." (citations omitted)).

The Boellners also argue that the evidence was insufficient to show that the creditors would be harmed if the cases were allowed to proceed separately. Again, the bankruptcy court relied upon the Boellners' statements of financial affairs and bankruptcy schedules. It determined that "the creditors will suffer great prejudice because if the exemptions were allowed to be stacked . . . [the creditors] would in all likelihood receive no distribution or significantly less distribution than they would if this was a joint case." Stated differently, the bankruptcy court found that if Marilyn were permitted to exempt her home under Arkansas law and Samuel were permitted to exempt his IRAs and annuities under federal law, their separate estates would have significantly less value than if their cases were substantively consolidated and the Boellners were forced to choose either federal or state exemptions. As it was with respect to the question of substantial identity, the evidence presented at the hearing was sufficient to establish the harm to creditors if the two cases proceeded separately.

We conclude that the bankruptcy court did not abuse its discretion in ordering joint administration and substantive consolidation, and thus we affirm its order of consolidation.

_____